GEORGE M. WHITE v. CITY OF SAN ANTONIO.

No. 949. Decided January 24, 1901.

**1. Municipal Corporation—Liability for Acts of Officers.**

While liable for unlawful acts of its officers in discharging functions conferred for the peculiar advantage of its own inhabitants, a city is not liable, as a rule, for their torts in discharging its duties in the interest of the public at large. Applications of this rule discussed. (Pp. 315, 316.)

**2. Cities—Enforcement of Quarantine—Liability for Acts of Officers.**

The enforcement of quarantine regulations and the establishment and maintenance of pesthouses (Revised Statutes, articles 4328, 4330) are peculiarly public functions; and a city is not answerable when damages are inflicted through the negligence or misconduct of its officers in their performance. (P. 316.)

**3. Same.**

No action lies against a city for damages caused to a hotel-keeper by the action of its mayor and health officer in taking possession of plaintiff's hotel and in placing and detaining therein certain persons suspected of having been exposed to the infection of yellow fever. (Pp. 314-317.)

ERROR to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

White sued the city and had judgment. On appeal by defendant this was reversed and the case remanded. Appellant then obtained writ of error on the ground that the ruling practically settled the case.

*C. A. Keller* and *Mason Williams,* for plaintiff in error.—The court erred in holding that "there is absolutely no evidence from which it can be found that the city directed or has ratified the proceeding" upon which this suit is based; and in finding that "the act complained of here was done by the mayor and health officer, and the city is not shown to have directed it, nor adopted it as its own." 1. Because the evidence shows that the mayor and health officer were acting under and by virtue of the city ordinances, and within the scope of their authority, and needed no specific or particular directions or instructions from the city. 2. Because the record in this case shows a sufficient ratification to bind the city even if the mayor and health officer had exceeded their authority under the ordinances of the city.

The court erred in sustaining the appellant's fifth assignment of error which complained that the District Court erred in refusing to charge that the city was not liable for any wrong or trespass committed by its mayor, city physician, or public officers, and in not instructing the jury to return a verdict for the defendant. The charge asked for was not applicable to the facts in this case, and it would have been error for the District Court to have given it.

The city charter having conferred upon the council authority to pass any and all ordinances not repugnant to the Constitution and the laws of the State, and authorized it by ordinance to make all regulations it might deem expedient for the promotion of public health or the sup-

pression of disease, and the council having by ordinance, pleaded in defendant's answer, authorized the mayor and board of health to quarantine and isolate all persons within the city suspected of contagious disease, and said mayor and board of health having, by virtue of said ordinance, as pleaded by defendant city, isolated and quarantined certain persons at plaintiff's hotel and prevented their mingling with the people and endangering the public health, the city of San Antonio was thereby as a matter of law directly connected with whatever tort was committed in seizing and converting plaintiff's hotel into a temporary pesthouse, and therefore the honorable Court of Civil Appeals erred in holding that there was no evidence tending to connect the city of San Antonio with said tort.

The court erred in reversing and remanding this case, because the effect of its judgment is to deprive appellee of his property and devote the same to public use, without adequate compensation, contrary to the Constitution of the State of Texas and the Constitution of the United States of America. Bill of Rights, sec. 17; Barber v. Dallas, 83 Texas, 150; City v. Barksdale, 83 Texas, 121; Dallas v. Miller, 27 S. W. Rep., 499, 500; City v. Beeman, 55 S. W. Rep., 763; City v. Mackey, 36 S. W. Rep., 761; City v. Mackey, 54 S. W. Rep., 33; City v. Dorr, 41 S. W. Rep., 1099; City v. Hill, 22 S. W. Rep., 862; City v. Linnard, 97 Pa. St., 242; Pumpelly v. Canal Co., 13 Wall., 177; Stetson v. Railway, 75 Ill., 74; Conniff v. San Francisco, 67 Cal., 45; Clayton v. City, 44 S. W. Rep., 669; 2 Dill. Mun. Corp., sec. 971; Cooley on Torts, p. 141; 3 Suth. on Dam., sec. 1061.

*Geo. C. Altgelt,* for defendant in error.—The city of San Antonio is not liable for the wrongful or tortious acts of its mayor, health officer, and police officers, committed in the enforcement of quarantine regulations. McFadin v. San Antonio, 54 S. W. Rep., 48; City of Corsicana v. White, 57 Texas, 382; Harrison v. Columbus, 44 Texas, 418; Peck v. Austin, 22 Texas, 263; Bates v. Houston, 37 S. W. Rep., 383; Rusher v. Dallas, 83 Texas, 151; Keller v. Corpus Christi, 50 Texas, 614; Whitfield v. City of Paris, 84 Texas, 431; Givens v. Paris, 24 S. W. Rep., 974; Conway v. Beaumont, 61 Texas, 10; City Charter, secs. 48, 49; Aaron v. Broiles, 64 Texas, 316; Dill. Mun. Corp., 975, 977, 144, 145; Cooley Const. Lim., 720; Jones on Neg. of Mun. Corp., sec. 30, p. 43; Ogg v. Lansing, 14 Am. Rep., 499; Brown v. Vinalhaven, 20 Am. Rep., 709; Bryan v. St. Paul, 33 Minn., 289; 8 Am. and Eng. Corp. Cas., 340; Elliott v. Philadelphia, 15 Am. Rep., 591; Wright v. Augusta, 6 Am. St. Rep., 256; Gilboy v. Detroit, 151 Mich., 121.

GAINES, Chief Justice.—This suit was brought by the plaintiff in error to recover of the city of San Antonio for the acts of its mayor and health officer in taking possession of the plaintiff's hotel and in placing and detaining therein certain persons suspected of having been exposed to the infection of yellow fever. Upon the trial he obtained

a verdict and judgment in his favor, from which the city appealed. The Court of Civil Appeals reversed the judgment and remanded the cause. Thereupon the plaintiff applied for and obtained a writ of error to the judgment of the appellate court upon the ground that its decision practically settled the case.

The plaintiff was engaged in the business of keeping a hotel in the city of San Antonio. A theatrical company appeared in the city, having come from New Orleans, where the yellow fever was then supposed to prevail. The persons composing the troupe were taken in charge by the police of the city, acting under the orders of its mayor and health officer, and were placed in apartments at the plaintiff's hotel and there confined for six days. In consequence of this action, the plaintiff's business was damaged as found by the jury.

By the charter of the city, its mayor and council are empowered "to prevent the introduction of contagious diseases into the city, to make quarantine laws for that purpose, and to enforce the same." The defendant city pleaded that by ordinances of the council it had been made the duty of the mayor, "whenever the board of health should deem it necessary, to establish quarantine against all persons coming into the said city who were liable to cause the introduction or spread of such contagious disease, as well as the isolation and quarantine of all persons within such city, such quarantine to be carried into effect in accordance with the rules and regulations established by the board of health;" and that he and the board of health had been empowered "to employ guards and assistants when necessary, and to establish quarantine stations, pesthouses, and hospitals for all persons detained under quarantine regulations."

Conceding, for the sake of the argument, that the acts of the mayor and the health officer were within the general scope of their authority and that the city would be liable therefor, if the wrongs were committed in discharging a duty in the interest of the city in its private corporate capacity, the question still remains, can the city be made responsible for their acts in preventing or attempting to prevent the spread of contagious diseases? A municipal corporation proper—a city for example—acts in a twofold capacity. Certain functions are conferred upon it in the interest of the public at large and certain others for the peculiar advantage of its own inhabitants. For the unlawful acts of its officers in performing functions of the former class, the corporation is held, as a rule, not to be responsible; but for their torts in discharging duties of a purely corporate character, the corporation is liable. Such is the line of distinction; but it seems to us that it is not always drawn with logical accuracy. The supply of water and of light, the construction and maintenance of sewers, and of wharves, at least where wharfage is charged by the municipality, are generally deemed to be for the peculiar advantage of the corporation, and cities are very generally, if not universally, held liable for injuries to the person or property of others resulting from the negligence or malfeasance of its officers with

respect thereto. But the maintenance of the peace and good order within the limits of a city is a matter of interest to the public at large, and therefore, for the negligence or misconduct of its police, or constabulary force, a city is held not liable. Policemen are deemed, with respect to such duties, officers of the State, whether elected by the voters of the city or by the council, or appointed by the mayor or some board constituted for that purpose. As to the liability of cities for the negligence of its officers in opening and maintaining its streets, there is some contrariety of opinion, though it is held, as we think by the great weight of authority, that they are so liable. City of Galveston v. Posnainsky, 62 Texas, 118. Since the public have a right to use the streets of a city and they are for the benefit of the public at large and not peculiarly for the interest of the corporation, it seems difficult to justify the holding under the general rule. However, the law is so settled in this State and very generally so settled elsewhere, either by statute or by judicial decision. The enforcement of quarantine regulations and the establishment and maintenance of pesthouses are matters of vital interest to the public in general and are peculiarly a public function, and therefore, when devolved upon a city, are most generally held to belong to that class of duties for which a city is not answerable, when, through the negligence or misconduct of its officers in their performance, damages are inflicted. The rule is recognized by our leading text-writers and is maintained by courts of the highest authority. Jones on Neg. of Mun. Corp., sec. 30; 2 Dill. on Mun. Corp., sec. 977; 1 Shearm. & Redf. on Neg., sec. 266; 2 Thomp. on Neg., 737; Tied. on Mun. Corp., sec. 332; Cooley on Torts, 2 ed., p. 740, 741, and note; Maxmillian v. The Mayor, 62 N. Y., 160; Lynde v. Rockland, 66 Me., 309; Spring v. Hyde Park, 137 Mass., 554; Boom v. Utica, 2 Barb., 104; Webb v. Board of Health (Mich.), 74 N. W. Rep., 734; Gilboy v. Detroit, 115 Mich., 121; Ogg v. Lansing, 35 Iowa, 495; Bryant v. St. Paul (Mich.), 21 Cent. L. J., 33. To these citations, many others might be added in which the question is presented in various aspects.

The statutes of this State provide that "all county and municipal quarantine shall be subordinate, subject to, and regulated by such rules and regulations as may be prescribed by the Governor or State health officer" (Revised Statutes, article 4328); and also that "all health authorities of the State, or of any county or city thereof, shall obey the rules and regulations prescribed by the Governor or State health officer." Rev. Stats., art. 4330. These provisions make the health officers of a city officers of the State, and show that in our State their functions are governmental and are conferred in the interest of the public at large.

In City of Henderson v. Clayton, 44 Southwestern Reporter, 667, and 57 Southwestern Reporter, 1, the Supreme Court of Kentucky hold in opposition to the opinion which we have expressed. The case relied upon to sustain their ruling is Haag v. Board of Commissioners, 60 Indiana, 511. That was an action against a county for wrongfully main-

taining a pesthouse near the dwelling of the plaintiff and to abate the nuisance. It was held that a demurrer to the petition was wrongfully sustained. It is not quite clear that the court intended to hold that an action for damages would lie against a public corporation in such a case. That an action may be maintained to abate by injunction a nuisance of the character of that in question, we have no doubt. Whether it can be sustained against a municipal corporation as well as against the officers who have created it, may be a question of some difficulty. But if the court in that case intended to hold that an action for damages could, at common law, be maintained against a county, we do not concur. With due deference, we think the authorities cited·in the opinion do not sustain that position. There is, to say the least, a controlling weight of authority in favor of the opposite view. The contrary seems to be held by the same court in the case of Summers v. The Board, 103 Indiana, 263, and in other cases cited in the opinion in that case.

Since we concur with the Court of Civil Appeals in holding that an action did not lie against the city for the wrongs complained of in the petition, and since the case has been brought here on the ground that the decision of that court practically settles the case, it becomes our duty, under the statute, not only to affirm the judgment of that court, but render judgment here for the defendant in error. It is accordingly so ordered.

*Judgment of District Court reversed and that of appellate court affirmed, and rendered accordingly.*