BREWSTER v. CITY OF FORNEY.*
(No. 7750.)

(Court of Civil Appeals of Texas. Dallas. May 5, 1917. Rehearing Denied June 23, 1917.)

1. EMINENT DOMAIN ⊚⟳112 — TAKING FOR PUBLIC USE — DISCHARGE OF SEWAGE — INJURY.

Damages to land on a dry waterway from discharge from city's septic sewer tank, operated under legislative authority, were not a taking, damaging, or destroying of property for a public use, required by Const. art. 1, § 17, to be adequately compensated, where such discharge did not constitute a nuisance, for in such case damages are damnum absque injuria.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 299, 300.]

2. MUNICIPAL CORPORATIONS ⊚⟳736—TORTS —NUISANCE—DISPOSING OF SEWAGE.

A municipality is liable for its torts or creation of a nuisance in the construction and operation of its sewage disposal plant, whether or not careless or negligent in such construction or maintenance, for such construction and maintenance are the discharge of duty of a purely corporate character for the peculiar advantage of its own inhabitants, and not in the interest of the public at large.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1552.]

3. APPEAL AND ERROR ⊚⟳216(6)—OBJECTIONS BELOW—REVIEW OF REFUSAL OF REQUESTED CHARGES.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1971, as to objections and exceptions to charges, article 1972, providing that failure to object and except to a charge is regarded as its approval, and article 1973, permitting requests of special charges correcting, amplifying, or extending the charge given, etc., appellant's failure to except to a charge for appellee does not preclude consideration of his exceptions and objections to refusal of his requested charge on the same issue; the right of a litigant to cure omissions, defects, or to group facts constituting a given defense by special charges not being taken away by these statutes.

4. NUISANCE ⊚⟳54 — INSTRUCTION — DEFINITION OF "NUISANCE."

An instruction defining a nuisance as "the use of one's property for the conducting of one's own business in such an unreasonable manner as will, under all the circumstances, unfairly cause real or material damage to another," is not incorrect, since it does in a general way contain the legal elements of a nuisance.

[Ed. Note.—For other cases, see Nuisance, Cent. Dig. § 130.

For other definitions, see Words and Phrases, First and Second Series, Nuisance.]

5. TRIAL ⊚⟳191(5) — INSTRUCTIONS — ASSUMING FACTS—NUISANCE.

In action against city for damages from discharge from city's septic sewer tank, plaintiff's requested charge that if the city so operated its sewage plant as to pollute the creek into which it emptied, and to cause the sewage water to collect in holes and ponds around and about plaintiff's residence, generating and emitting foul gases and noxious odors, congregating large volumes of flies and mosquitoes about plaintiff's home, causing plaintiff and his family loss of time, illness, discomfort, and nonenjoyment of his home, it would be guilty of maintaining a nuisance and liable to plaintiff for all damages resulting therefrom to his property or due to the illness of his family or discomfort in the use of his home, was properly refused, since it did not attempt to define a nuisance, but recited

⊚⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

facts which were declared in law to constitute a nuisance, for which defendant would be liable in damages, and, in assuming their existence, it was upon the weight of evidence and misleading, and by adopting plaintiff's theory it withdrew from the jury the determination of the credibility of witnesses and weight to be given the testimony.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 428.]

6. EVIDENCE ☞553(2)—EXPERT TESTIMONY—HYPOTHETICAL QUESTION.

In such action the court properly excluded answer of an expert witness for plaintiff to question neither showing the extent or quantity of sewage accumulations, nor stating its condition when it reached plaintiff's residence, whether raw or diluted sewage, but merely asking whether the malodors, flies, and mosquitoes resulting from the condition would sicken plaintiff's family.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2370.]

7. APPEAL AND ERROR ☞1058(2)—HARMLESS ERROR.

Appellant could not urge error in excluding his expert witness' answer to a certain question where such witness was allowed to testify to substantially the same facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4195, 4201.]

8. TRIAL ☞352(5)—REQUESTED SPECIAL ISSUES—ASSUMING FACTS.

In action against city for damages from discharge from city's septic sewer tank, a requested special issue, "Did the filth, stagnant water, offensive odors, noxious gases, mosquitoes and flies, any or all of these causes coming from the branch as the result of defendant's sewage emptying therein and flowing down, in, and around plaintiff's residence, cause him or any of his children to become sick or lose their health," was properly refused, because it assumed the existence in and around plaintiff's residence of filth, offensive odors, etc., as the result of the operation of defendant's plant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 841.]

9. TRIAL ☞351(5)—REQUESTED SPECIAL ISSUES—COVERED BY OTHER SPECIAL ISSUES.

A requested special issue is properly refused where issue therein is submitted to the jury in other issues in nearly identical language and favorably to the requesting party.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 834.]

10. APPEAL AND ERROR ☞1062(1) — HARMLESS ERROR.

In action against city for damages from city's septic sewer tank, the court's inquiry of the jury whether the city had any notice of damage about to be done plaintiff from its plant, to which the jury answered, "No," did not appear prejudicial to plaintiff as impressing the jury that such notice was necessary to his recovery where the jury found plaintiff was damaged.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4212.]

Appeal from District Court, Kaufman County; F. L. Hawkins, Judge.

Action by A. L. Brewster against the City of Forney. From judgment for defendant, plaintiff appeals. Affirmed.

Bond & Bond, of Terrell, and Woods & Morrow, of Kaufman, for appellant. Lee R. Stroud and Wynne & Wynne, all of Kaufman, for appellee.

RASBURY, J. Appellant sued appellee for damages in the sum of $16,000. It was alleged by appropriate pleading that appellee constructed, for the use and convenience of its citizens, a sewage disposal system, by which the city sewage was carried in pipes to a septic tank built upon the bank of a dry waterway, known as Mustang branch or creek, from whence the discharge from said septic tank, described as water, slush, and filth, flowed down the channel of the branch to plaintiff's homestead, a distance of about 1,400 yards, and collected in holes and pools within 140 or 160 feet of appellant's residence and servant's house, creating noxious and offensive odors and generating flies and mosquitoes. As the result thereof it was further alleged that the use of appellant's home was rendered intolerable and his lands permanently damaged, and during the years 1913 and 1914 appellant and his family were afflicted with continuous and serious bodily illnesses, subjecting appellant to great expense for medical care and treatment for himself and family. Damages in the sum of $8,000 to his home and land were sought, and a similar sum for the illness and expense caused him and family.

Appellee, in addition to generally and specifically denying appellant's allegations of fact, alleged affirmatively that all matter deposited in its septic tank, before being discharged therefrom, was subjected to a process that removed all solids and reduced it to practically clear water which lost all odor within 100 feet of its discharge and destroyed, instead of breeding, the insects complained of. Further, that the conditions at appellant's homestead were the result of filth engendered by the condition of appellant's house and hog lots and other animal inclosures on his premises, superinduced by the fact that said creek at appellant's premises is flat and marshy and filled with rank vegetation, constantly rotting therein. There were other pleadings raising issues of law not necessary to recite. Testimony is found in the record tending to support the allegations of the pleadings of the respective parties.

The case was submitted to a jury upon special issues, their findings, stated in narrative form, being these: Appellee's sewage plant was selected with due care and properly constructed and the discharge therefrom was into Mustang creek, a natural water course running through appellee city. Water or sewage from appellee's disposal plant, due in part to its operation, did collect and stand in holes and ponds in Mustang branch near appellant's home, causing offensive, but not poisonous, odors, and to such extent made the place undesirable as a home. Such condition did generate mosquitoes and draw flies to appellant's residence, but to what extent the jury could not determine. Forty per cent. of the sewage and refuse from ap-

pellee city would have entered the creek above appellant's premises whether there was a disposal plant or not. The condition in and about appellant's house did not cause the illness in his family, and he lost no time on that account. The condition of his own premises may have caused the illness in his family. The present fair market value of appellant's land with appellee's disposal plant constructed and operated as it is is $135 per acre. Without the plant as constructed and operated it would be $145 per acre. In answer to the question as to whether the plant as operated is a nuisance the jury replied, "We believe not." Both appellant and appellee presented motions for judgment upon the findings of the jury, after considering which the court entered judgment for appellee. From such judgment this appeal is taken.

[1] Under authority of the first assignment, which challenges the action of the court in overruling appellant's motion for judgment, it is contended that in view of the finding of the jury that appellant's land was damaged $1,750, such action of the court was the taking, damaging, or destroying of appellant's property for public use without adequate compensation in violation of the Constitution. Article 1, § 17. The position of counsel, based on the foregoing contention and gathered from the discussion, is that whenever it appears that damages have resulted to property, as found by the jury in the present case, compensation follows. as a matter of course, and that the lower court should have entered judgment for appellant on the jury's findings in that respect. The counter contention of counsel for appellee is that concurrent with the damage it must also appear as a fact that the use constitutes a common-law nuisance; and the jury having found that the use of the creek by appellee did not constitute a nuisance, the damage was damnum absque injuria. In what was said to be a case of first impression in this state it was declared that in the absence of constitutional restrictions a legislative grant would legalize all acts done in strict pursuance thereof, and any damage in consequence would be, as urged in this case, damnum absque injuria. Gainesville, Henrietta N. W. Ry. Co. v. Hall, 78 Tex. 169, 14 S. W. 259, 9 L. R. A. 298, 22 Am. St. Rep. 42. An application of that rule in this case would be, that if appellee, in the exercise of the authority granted by the Legislature to construct and operate a sewage disposal plant, had strictly pursued that authority, any resulting damage to the citizen would not be actionable. But in the case cited the court further declares that the insertion in our Constitution of the words, "damaged, or destroyed," forbids the application of the rule stated and bestows upon the citizen, injured in the construction or operation of a public work, that remedy he would have against the individual who similarly injures his property. The only distinction is in the remedy; since if the use is private the condition may be abated, while if public, the injury is to be compensated in damages. The court further declares that such being the rule the inquiry is whether the acts complained of, being the manner of the operation of railroad trains adjacent to the suitor's residence, is a nuisance. A similar holding was had in Sherman Gas & Electric Co. v. Belden, 103 Tex. 59, 123 S. W. 119, 27 L. R. A. (N. S.) 237, where it was said that in order to justify a recovery in such cases the complaining party is required to prove such facts as will constitute a nuisance, and that the standard on the issues of nuisance is a showing "that the conditions caused by the operation of the plant were such as would disturb and annoy persons of ordinary sensibilities, and of ordinary tastes and habits." It was also said, "if there be no nuisance, there can be no recovery of damages for such annoyance as may exist, nor for diminution in the value of the property." As we have recited in the present case, the jury found that the use of the branch by appellee was not a nuisance; and unless it was, applying the holding of the court of last resort in its construction of the constitutional provision invoked by appellant, damages for diminution in the value of appellant's property cannot be recovered. The case last cited clearly contemplates that there may in some instances be an element of damages without the existence of a nuisance, which are damnum absque injuria. In consequence of which, coupled with the finding of the jury on the controlling fact of nuisance vel non, we conclude the court did not err in refusing to enter judgment for appellant for the damage to his land.

[2] Appellee further contends on the issue we are discussing that conceding the condition complained of to be a nuisance, the city would only be liable when it was made to appear that the condition was the result of carelessness and negligence in the construction and operation of its plant because done exclusively in the public interest. To sustain the proposition appellee relies on City of Ft. Worth v. Crawford, 64 Tex. 202, 53 Am. Rep. 753. In that case the city authorities located and established a "burial" place for dead animals, garbage, excrement, etc., found in the city, and provided by ordinance that such refuse should be buried in ditches four to six feet deep. Such acts were held to be done exclusively in the interest of the public because it improved the sanitary condition, in which case the city would not be liable merely because it maintained the burial ground there, but only for its negligence in maintaining it. 74 Tex. 404, 12 S. W. 52, 15 Am. St. Rep. 840. Conceding that the case sustains the rule invoked by appellee, yet it occurs to us that it is without controlling force in the present case. We do not understand that it is claimed in the instant case

that the construction and operation of a sewage disposal plant is per se a nuisance, but that the discharge therefrom, by reason of its accumulation in and about appellant's premises, creates a nuisance. Further, if it can be said that the rule announced in that case has the application claimed by appellee to the facts in that case, that is that a municipality may, in the public interest, create a nuisance and be liable for the consequences in the event only that it acts carelessly and negligently in the operation of the machinery which creates the nuisance, it appears that rule has been departed from. In White v. San Antonio, 94 Tex. 313, 60 S. W. 426, and Ostrom v. San Antonio, 94 Tex. 523, 62 S. W. 909, it was said that a municipal corporation acts in a two-fold capacity, certain functions being conferred upon it "in the interest of the public at large, and certain others for the peculiar advantage of its own inhabitants." If its officers act unlawfully in the administration of the former the corporation as a rule is not responsible, "but for their torts in discharging duties of a purely corporate character the corporation is liable." Such purely corporate acts are declared, among other things, to be "the supply of water and of light, the construction and maintenance of sewers and wharves." Also it was said in Texas & Pacific Ry. Co. v. Edrington, 100 Tex. 496, 101 S. W. 441, 9 L. R. A. (N. S.) 988, that under article 1, § 17, of the Constitution, "our courts have uniformly held that neither the necessity for the structure nor the manner in which it was used constitute a defense to a claim by the owner for compensation for depreciation in the value of his property." See, also, City of Denver v. Davis, 37 Colo. 370, 86 Pac. 1027, 6 L. R. A. (N. S.) 1013, 119 Am. St. Rep. 293, 11 Ann. Cas. 187, for a thorough and illuminating discussion of the rule. Accordingly, we conclude that the construction and operation of the sewage disposal plant by appellee was done in its corporate character for the peculiar advantage of its own inhabitants, and would be liable for its torts in that respect, as distinguished from its acts done in the interest of the public at large.

[3] The next issue presented is the action of the court in refusing a special charge requested by appellant. Before the case was submitted to the jury both parties tendered the court special charges defining a nuisance. The court allowed the charge tendered by appellee and refused the one tendered by appellant. Appellant objected and excepted to the action of the court in refusing to allow the special charge tendered by him, but did not so object and except to the action of the court in allowing the charge tendered by appellee. The record so standing, appellee objects in limine to any consideration by this court of the action of the trial court in refusing appellant's charge, on the ground that such action may not be reviewed in the absence of an objection to the allowance of ap-

pellee's charge. It is now, we believe, the uniform holding of all Courts of Civil Appeals that the action of the trial court in giving its main charge or in the giving or refusing of special charges may not be reviewed on appeal unless objected and excepted to in the statutory manner. This is so of course because the statutes declare that in the absence of such objections and exceptions such action is considered approved. This rule has been so often declared we will not be expected to cite the statutes or the cases. By the statutes and their construction appellant is denied the right here to complain of the action of the court in giving the charge requested by appellee. He, in fact, does not complain of such action. He does, however, complain of the action of the court in refusing his special charge. Appellee, however, in effect, argues that it was necessary for the appellant to object and except to the allowance of the charge given at appellee's request, in order for appellant to secure consideration of his objections and exceptions to the action of the court in refusing the charge he requested, on the ground that both charges presented the same issue. We believe such a construction is not contemplated or authorized by the several statutes controlling the matter. While article 1971, Vernon's Sayles' Civil Statutes, requires the prescribed objections and exceptions to be taken to the charges given by the court, and while article 1972, Id., provides that failure to so object and except shall be regarded as approval of the charge so given, yet article 1973, Id., permits litigants as of yore to request special charges correcting, amplifying, or extending the charge actually given or to cure any supposed omissions or defects or to group the facts constituting a given defense, providing the refusal to give such special charge is objected and excepted to as prescribed. The very reason urged by appellant for giving the charge is that the one actually given by the court was insufficient, because lacking in explanation of the appellant's legal rights, which is but saying that it was insufficient or omitted essential ingredients. As we have said, it always has been the right of a litigant to cure omissions, defects, or to group facts constituting a given defense by special charges, and that under the articles cited that right remains inviolate, we think clear. That being true, it obviously follows that the objections and exceptions should be taken to the action of the court in refusing that which cured the defect or omission rather than to that which as far as it went correctly stated the rule.

[4] Such being our views concerning the procedure to be observed in such cases, we are brought to a consideration of the charge requested by appellant and refused by the court. Without deciding that precise issue it can be said that the charge requested by appellee and allowed by the court defining a nuisance is not incorrect, because it does in a

general way contain the legal elements of a nuisance. Gose v. Coryell, 59 Tex. Civ. App. ·504, 126 S. W. 1164. In the case cited it is said in substance, in approval of the rule stated by Cyc., that the reasonableness or unreasonableness of the use of property for a given purpose in a particular locality and in the manner and under the circumstances ·of the case is a fair test of whether such use constitutes a nuisance. The trial court followed that rule when it adopted appellee's charge defining a ·nuisance as "the use of one's property for the conducting of one's ·own business in such an unreasonable manner, as will under all the circumstances unfairly cause real or material damage to another." Thus, it will be seen, having, as we have, reached the conclusion that it was not necessary for appellee to do more than object and except to the action of the court in refusing his special charge, that the question is, Should the court, as urged by appellant, have allowed the requested charge in amplification of the one given?

[5] The effect of the charge refused by the court was to tell the jury if appellee so operated its sewage plant as to pollute the creek into which it emptied and to cause the sewage water to collect in holes and ponds around and about appellant's residence, generating and emitting foul gases and ·noxious ·odors, congregating large volumes of flies and mosquitoes about appellant's home, causing appellant and his family loss of time, illness, discomfort, and ·nonenjoyment of his home, it would be guilty of maintaining a nuisance and liable to the injured party for all damages resulting therefrom to his property or due to the illness of his family or discomfort in the use of his home.

The foregoing fairly and fully presents the ·substance of the charge requested by appellant as defining a nuisance and which appellant contends should have been given in amplification of the court's charge urged to be insufficient. We feel constrained to hold that the charge was properly refused. It does not attempt to define a nuisance, but recites facts which are declared in law to constitute a nuisance and for the existence of which the guilty party would be liable in damages. As applied to the present case it assumes their ·existence against appellee, and for that reason is upon the weight of the evidence and misleading. It recites in so many words the pleading of appellant, and, while the evidence of appellant, as we have said, tended to support the pleading, the charge in effect adopts appellant's theory and withdraws from the jury the determination of the credibility of the witnesses and the weight to be given to the testimony. We do not mean to say that trial ·courts may not enumerate or group facts upon which the jury may, if they believe the testimony establishes them, return a verdict. The charge under consideration does not, we believe, meet that rule, since it entirely fails to advise the jury that they must find the exist-

ence of the facts so enumerated from the evidence. On the contrary, it states the facts and declares that they constitute a nuisance for which a person responsible therefor is liable at law in damages. The allowance of the charge would obviously, we believe, have misled the jury. We accordingly conclude that the charge was not fairly an amplification of the court's definition of a nuisance, and an incorrect enumeration or grouping of the facts constituting appellant's cause of action.

[6] The court's action in excluding certain expert testimony is next challenged. Appellant, prior to trial, secured the deposition of Dr. W. W. Samuel. Upon trial direct interrogatory No. 5 was offered in evidence, reading as follows:

"Now, Doctor, I will ask you to please state whether or not the condition of the creek or branch as a result of the sewage complained of flowing into said creek and producing the condition as above detailed with reference to bad odors, flies, and mosquitoes, and such filth accumulating in said creek within 132 feet of plaintiff's residence where he and his abovenamed children reside, would that or not likely produce or cause the trouble· that either or all of the aforesaid children could be the cause of the affliction or trouble or conditions that you found them in when you operated upon them?"

To this interrogatory the witness answered:

"I would say that sore throat and tonsilitis are the most frequent diseases caused by these sewer gases and infections, and that they would also be liable to have a number of other diseases, such as typhoid fever, and in fact almost any disease that the people who had been to the toilets which drained into the waters were affected with."

The answer was excluded, on the ground, as appears from the bill of exceptions, that it was leading, that the facts stated in the question were not a sufficient hypothesis on which to elicit the opinion of the witness, and not supported by the facts proven in the case. We think the interrogatory was not objectionable because leading, but it does appear that it lacked a sufficient hypothesis. The substance of the question is that the witness is asked to state whether in his opinion the condition resulting from the sewage flowing into the creek and accumulating within 132 feet of appellant's residence and creating bad odors would cause the illness to appellant's children for which the witness treated them. The condition to which the examiner refers, that is, the facts constituting the condition, is not included in the question. It may have been stated in other interrogatories, but if so it does not appear from that portion of the deposition contained in the statement of facts. That portion of the direct testimony contained in the statement of the facts does not disclose any question of the kind, and much of the deposition seems to have been excluded. The general rule is that a given hypothetical question should fairly state such facts as the proof of the litigant submitting the question fairly tends to establish and fairly presents his claim or theory. Jones, Ev. § 371. The question did

not show the extent or quantity of the sewage accumulations, did not state its condition when it reached appellant's residence, whether raw or diluted sewage, but merely asked the witness whether the malodors, flies, and mosquitoes resulting from the condition would sicken appellant's family.

[7] Further, if it can be said that there was error in the exclusion of the witness' answer, it appears that he was permitted to testify to identically the same facts, as appears from the following evidence:

"Can you say as a fact, Doctor, that a creek slightly polluted with ordinary city sewage will produce any kind of sickness where the water is not used for any purpose?" "I can state as a fact that any one exposed to conditions such as you mention will in all probability become sick. I would say that sore throats and tonsilitis are the most frequent diseases caused by these sewer gases and infections, and that they would also be liable to have a number of other diseases, such as typhoid fever, and, in fact, almost any disease that the people who had been to the toilets which drained into the sewers were infected with."

We conclude the court did not err in the respect stated.

[8, 9] One of the special issues submitted to the jury was this:

"Did the construction and operation of the sewage disposal plant by the city of Forney cause any of the sickness in plaintiff's family? If, so, specify what sickness was so caused." The answer was, "No."

In lieu of such special issue appellant requested the following:

"Did the filth, stagnant water, offensive odors, noxious gases, mosquitoes and flies, any or all of these causes coming from the branch as the result of defendant's sewage emptying therein and flowing down, in, and around plaintiff's residence cause him or any of his children to become sick or lose their health?"

It is urged that the issue submitted by the court did not contain a sufficient explanation of the ground upon which appellant sought a recovery, while the refused charge did. First, it may be said that the issue tendered by appellant was incorrect, because it assumed that filth, stagnant water, offensive odors, noxious gases, mosquitoes and flies did, as the result of the operation of appellee's plant, exist in and around appellant's residence. Secondly, the issue of whether the discharge from the plant collected in and around appellant's residence was submitted to the jury in nearly identical language with that contained in the refused charge in the first, second, and third issue and answered, with certain limitations, favorably to appellant. As a consequence it appears that the jury had well in mind the issue tendered by the charge given by the court, that is, whether the existence of the conditions found by them in answer to first, second, and third issues caused illness in appellant's family. For the foregoing reasons, we conclude the court did not err in the respect urged. It is further urged that the findings of the jury are so contradictory a proper judgment cannot be entered thereon. This contention is based upon the finding of the jury in favor of appellant that partly due to the operation of the sewage disposal plant the discharge therefrom did collect in holes in proximity to appellant's residence and emit offensive odors, and to such extent did render his residence undesirable, and as a result of all of which his property was damaged $1,750, notwithstanding which the condition complained of did not constitute a nuisance. Under the rule announced by the Supreme Court and by which we are of course bound, such findings are not in legal contemplation contradictory. As we have indicated at another place the effect of the holding in Sherman Gas & Electric Co. v. Belden, supra, is that damages may result, but not be recoverable, unless the condition which produces it is in law a nuisance. The jury in the present case seems very clearly to have understood the issue and to have believed that while appellant was damaged the appellee had not so used its property as to create a nuisance. It does seem to us that the situation creates a hardship upon appellant, but that the jury's finding precludes a reversal by this court on that issue.

It is also earnestly contended that the jury's finding that the conditions complained of were not a nuisance is wholly unsupported by the evidence, and that we should overrule their conclusions in that particular. We have considered the evidence on this issue. To set it out here would subserve no useful purpose, since it is alone our judgment on that evidence that is invoked, and we think it reasonably clear that the evidence is sufficient to sustain the finding. It is probable that in many cases appellate courts would reach a conclusion upon testimony different from that reached by juries, if we had the authority to substitute our judgment for that of the jury, as we are constantly urged to do, but the Legislature has placed that prerogative with the jury, and we cannot say that it has not wisely done so.

[10] The trial court inquired of the jury whether appellee had any notice of any damage about to be done to appellant from its plant, to which the jury answered, "No." Appellant complains of such issue as tending to impress upon the jury that notice was necessary in order to enable appellant to recover. While we are unable to see the reason for submitting such issue, at the same time it appears that it did not have any controlling influence on the jury, since it in fact found that appellant was damaged, and it could not have had any controlling force on the issue of nuisance vel non.

We feel for the reasons stated that no reversible error was committed on the trial of this case, and that as a consequence it becomes our duty to affirm the judgment.