## ROBISON v. CITY OF WICHITA FALLS.
### No. 3385.

Court of Civil Appeals of Texas. Amarillo.
April 9, 1930.

Rehearing Denied April 30, 1930.

E. W. Napier, of Wichita Falls, for appellant.

Thelbert Martin, of Wichita Falls, for appellee.

HALL, C. J.

The appellant, Robison, sued the city of Wichita Falls to recover damages in the sum of $25,000, alleging that while he was an employee of said city, working in its sanitary department, the city furnished him with disinfecting powder to be used in the perform-

282

ance of his duties in said department; that said powder was extremely irritating to his eyes, and the use of same resulted in finally destroying his eyesight. He alleges that he is a man of extremely low order of intelligence, and did not know of the danger.

The city answered by a general demurrer and four exceptions. The court sustained the general demurrer and three of the four exceptions, overruling the last. The so-called special exceptions which the court sustained were: (1) That the petition showed that plaintiff was guilty of contributory negligence; (2) was barred by the statutes of limitations of two years; (3) showed that the defendant was in the exercise of its police powers and was not liable for negligence of employees; and (4) that the action could not be maintained for the reason that the city charter expressly exempts the city from liability for such damages.

The plaintiff excepted to the ruling of the court and declined to amend, and judgment was entered in favor of the defendant.

Because of the court's action in sustaining the several demurrers, it is necessary to set out parts of the petition material to the questions to be considered. Such allegations are as follows:

"That the plaintiff has been in the employ of the defendant, City of Wichita Falls, in what is known as the sanitary department, for approximately fifteen years and that during the last four or five years the defendant has required the plaintiff to use, in the performance of his duties as such employee, a disinfectant known as 'Pink Disinfectant Powder,' and being composed of Calcium-Hydroxide and Soweco Coal Tar disinfectant, the latter being a resultant of the destructive distillation of coal tar; that said disinfectant powder was furnished to the plaintiff in barrels in powder form for his use in his work, as aforesaid, and that the defendant required the plaintiff as a part of his duties in connection with said employment, to use and handle said disinfectant powder and to distribute and deposit the same wherever required.

"That said disinfectant powder is a strong irritant and is particularly harmful and dangerous to the dyes; that the plaintiff is and was during all the times hereinafter mentioned, an ignorant man of a low order of intelligence, and that he was wholly unfamiliar with such material and the harmful effects thereof, and that he did not know that if applied to his eyes it would produce any injurious results; that the defendant failed and neglected to furnish the plaintiff with any suitable instrument with which to apply said material and that the plaintiff was forced and compelled to apply the same with his hands or with such instruments as he was able to find or pick up in the course of his work; that in so handling said mate-

rial the plaintiff would inevitably get the same on his hands and in wiping the perspiration from his face it was thereby transferred to his eyes; that said powder was often blown into his face and eyes by the wind during the course of his duties; that during the first year or two the plaintiff realized that said material burned his eyes but did not know that it would produce any lasting or serious results; that about two or three years prior to the filing of this suit the plaintiff's eyes began to be sore, though not sufficient to cause him any serious trouble nor to affect his vision in so far as he was able to determine; that while he realized that his eyes were sore, he did not know or understand and had no way of knowing that the material with which he was working caused or contributed to such condition in any degree; that his condition was not serious enough in his judgment to require the attendance of a physician and he therefore applied such home remedies as were available to him and continued in the service of the City in the capacity above stated and continued using said disinfectant as aforesaid, until on or about the first day of April, 1929, when as the result of the continuous application of said material to his eyes as aforesaid, he became totally blind and was forced and compelled to discontinue his work with the City; that he never knew until he had lost his eyesight that the material with which he was working had any effect whatever upon the condition of his eyes or contributed in any manner thereto, and he believes and therefore avers that while he experienced some discomfort during the first few years that he handled said material, yet no lasting or serious effects were produced or would have been produced had he not used said material during the last eighteen months, and he believes and therefore avers that his blindness is wholly attributable to the injury sustained during the eighteen months next preceding the filing of this petition, and that as a result thereof he is now totally and permanently blind.

"The plaintiff alleges that J. M. Farrell is the chief sanitary officer of the City of Wichita Falls, and that said J. M. Farrell was, during all of the times hereinabove alleged, in complete charge and control of the sanitation work in said City and that the plaintiff herein was working at all times under the orders and directions of said J. M. Farrell; that the defendant and the said J. M. Farrell knew that the plaintiff was a man of an extremely low order of intelligence and that he did not know or understand or appreciate the contents and nature of the disinfectant powder with which he was required to work and that he did not know or understand the dangerous properties of said powder; that the defendant and its chief sanitary officer did know what said powder contained and knew or in the exercise of ordi-

nary care ought to have known that if applied to the eyes continuously over a long period of time, as herein alleged, it would have the effect of seriously impairing and destroying the eyesight and that it was therefore the duty of the defendant and its said officer to warn the plaintiff of the danger of getting such material in his eyes and that it was the duty of the defendant to furnish the plaintiff with some tool or instrument with which to distribute such disinfectant so that it would not be necessary for him to get it on his hands, but that notwithstanding such duty, the defendant failed and neglected to warn the plaintiff of the danger of such material and failed and neglected to furnish the plaintiff with any tool or instrument with which to apply and use the same and that such failure on the part of the defendant was negligence and were the proximate causes of the plaintiff's injuries."

Having sustained the general demurrer to the petition, the court should have made no further ruling upon the other exceptions. Maytag Southwestern Co. v. Thornton (Tex. Civ. App.) 20 S.W.(2d) 383.

The correctness of the court's action in sustaining the general demurrer is the only question to be considered. It is a cardinal rule in the construction of a pleading, when its sufficiency is challenged by a general demurrer, that every reasonable presumption (Paine v. Hart-Parr Co. [Tex. Com. App.] 228 S. W. 121) and every reasonable intendment (Liberto v. Sanders [Tex. Com. App.] 259 S. W. 1080) must be indulged in favor of its sufficiency. Or, as it is variably expressed, the pleadings must be liberally construed in the pleader's favor, and every fact supplied that may be reasonably inferred from the language used (Humphreys Oil Co. v. Liles [Tex. Com. App.] 277 S. W. 100, Id. [Civ. App.] 262 S. W. 1058), and that inferences favor its sufficiency (Stephenson v. Gaines [Tex. Com. App.] 298 S. W. 401), when it is so attacked. Interpreted in the light of this rule, we think the plaintiff's amended petition is sufficient. It shows that plaintiff is a man of weak mentality and very little judgment and discretion; that he had been employed for years by the city in disinfecting and cleaning premises or appliances which were a part of the sanitary fittings of the city's property; that he was a servant working for the city as his master in a menial and administrative capacity with only such aids as his master had provided; that his duties had nothing to do with the governmental purpose of the city in the administration of any general law or regulation pertaining to the health of the public, but to the limited sphere of a circumscribed locality for the benefit of the city only, or a small number of persons, probably its officers and employees. In other words, it may be reasonably inferred that he was a janitor, whose duties required him to keep certain premises in a sanitary condition by the use of disinfectants and the resort to ordinary cleaning methods. If we are correct in these inferences, then he was not related to the governmental functions of the city, in which the general public or the state was interested, or in which the health laws and sanitary regulations prescribed by the Legislature, and their enforcement, were involved.

When the relation of master and servant is shown to exist between a municipality and such an employee, the rule that the city is exempt from liability for its negligence or torts does not apply, but it is liable in such cases as any other master. City of Greenville v. Branch (Tex. Civ. App.) 152 S. W. 478; White v. City of San Antonio, 94 Tex. 313, 60 S. W. 426; Ostrom v. City of San Antonio, 94 Tex. 523, 62 S. W. 909; City of Stephenville v. Bower, 29 Tex. Civ. App. 384, 68 S. W. 833; Whitfield v. City of Paris, 84 Tex. 431, 19 S. W. 566, 15 L. R. A. 783, 31 Am. St. Rep. 69; Galveston v. Posnainsky, 62 Tex. 118, 50 Am. Rep. 517; Green v. City of Amarillo (Tex. Civ. App.) 244 S. W. 241, 242. In this case, Judge Boyce said:

"The modern city performs functions of a dual nature. Primarily it is a governmental agency, clothed with limited powers of sovereignty, exercised for 'purposes essentially public, purposes pertaining to the administration of general laws made to enforce the general policy of the state.' The city may be granted the same immunity against claim for damages for its acts done in its governmental capacity as is enjoyed by the general government in such matters. Other acts of the city are done in the exercise of powers not strictly governmental, but 'voluntarily assumed and exercised for the private advantage and benefit of the locality and its inhabitants.' For its acts done in this latter capacity, the city, in the absence of some special exemption, is liable to the same extent as any private person or corporation performing the same acts."

It is said in 6 McQuillin, Munic. Corp. (2d) § 2790:

"Where a municipality is exercising an administrative function at the time an employee is injured, it owes its employee the duty of a safe place to work; and for a failure to do so; and where by reason of such failure an employee is injured, without fault on his part, the corporation would be liable under the same circumstances that a private individual or corporation would be. * * * An employee of a municipality may sue a municipality for torts the same as any other person."

In 43 C. J. 930, § 1700, it is said:

"A municipality, being not only a public agency, but also a quasi-private individual, is therefore, subject to the law; for its

wrong to the public it may be prosecuted; and for its torts against individuals it may, in a proper case, be sued in a civil action for damages like a private corporation. * * * Subject to the rules hereinafter stated, a municipal corporation, acting through its officers and agents, is liable for the consequences of its negligence; and as to what constitutes negligence, the general rules apply."

In section 1701, it is said:

"Generally in reference to liabilities for torts it is held that the municipal corporation has a dual character, the one public and the other private and exercises correspondingly twofold functions and duties. The one class of its powers is of a public·and general character to be exercised in virtue of certain attributes of sovereignty delegated to it for the welfare and protection of its inhabitants or the general public; the other relates only to special or private corporate purposes, for the accomplishment of which it acts, not through its public officers as such, but through agents or servants employed by it. * * * In its second character above mentioned, that is, in the exercise of its purely municipal functions, or the doing of those things which relate to special or private corporate purposes, the corporation stands upon the same footing with a private corporation and will be held to the same responsibility with a private corporation for injuries resulting from its negligence while acting within the scope of such municipal power."

In section 1705, it is said:

"There is an implied or common-law liability for the negligence of a municipal corporation in the performance of corporate acts, which have relation to the management of the corporate or private concerns of the municipality, and from which it derives special or immediate profit or advantage as a corporation, or for its acts or negligence.in the exercise of corporate powers and duties for the peculiar benefit of the corporation in its local or special interest."

In section 1713, it is said:

"A municipal corporation may, in a proper case, be held liable for negligence at the suit of an employee. When acting in its quasiprivate or ministerial capacity a municipality owes its employees the same measure of duty, and will be liable to them for injuries in the same manner and to the same extent as private corporations or individuals, as in the case of an injury to one working on the street, or in the construction of a sewer or waterworks, unless the employment of the person injured was ultra vires."

■■ From the allegations of the petition, with reference to the date of the injury, it is clear that the action was not barred by the statute of limitation of two years (Rev. St.

1925, art. 5526), nor is the petition subject to the demurrer upon the ground that the appellant was guilty of contributory negligence. The allegations simply raise a question of fact. The rule, as stated in 45 C. J. 995, § 547, is:

"A person who is mentally deficient is not guilty of contributory negligence if his failure to use ordinary care for his own safety is due to want of capacity to appreciate and avoid danger. The care required by a person laboring under any mental disability is that care which may reasonably be expected of one having the same capacity to appreciate and avoid injury; and a person who is, by reason of mental incapacity, wholly unable to apprehend apparent danger and to avoid exposure to it, cannot be guilty of contributory negligence."

In the same authority, 703, section 79, it is said:

"Where it is, or should be, apparent that a person is so devoid of intelligence as to be unable to apprehend danger and avoid or escape it, this circumstance imposes on those whose acts or omissions may injure him, a duty to exercise care commensurate with his incapacity to take care of himself."

It is charged in the petition in effect that the plaintiff was almost an imbecile; that he was incapable of knowing or appreciating the harmful chemical ingredients in the disinfectant which the city gave him to use, and that the city had knowledge of both his feebleness of mind and the dangerous substance with which he was required to perform his duties.

For the reasons stated, the judgment is reversed, and the cause remanded.

Reversed and remanded.