## GOTCHER et ux. v. CITY OF FARMERSVILLE.

### No. 12858.

Court of Civil Appeals of Texas. Dallas.

March 23, 1940.

Rehearing Denied April 20, 1940.

Kennemer & Armstrong, of Dallas, and Wallace Hughston, of McKinney, for appellants.

Touchstone, Wight, Gormley & Touchstone, of Dallas, for appellee.

BOND, Chief Justice.

Olin Gotcher, acting for himself and wife, instituted this suit in the District Court of Collin County, Texas, against the City of Farmersville, a municipal corporation, to recover damages for the death of their minor child, resulting from alleged negligence of the City in the construction and maintenance of a cesspool for disposal of city sewerage, operated for the exclusive benefit of the inhabitants of the City who may avail themselves of such service by payment of a specific charge. The trial court sustained the City's general demurrer to plaintiffs' petition, and, plaintiffs refusing to amend, dismissed the suit.

Because of the court's action on the demurrer, it becomes necessary to relate extensively the appropriate portions of plaintiffs' petition:

It is alleged that the cesspool was an open structure, approximately 20 feet wide, 40 feet long, 9 or 10 feet deep, and divided into four or five compartments. The outside walls extended above the surface of the ground 6 or 8 inches, and no fence, or other safeguard or protection, was maintained around the pool. The compartments were filled with some character of acid used in the decomposition of sewerage, and of such consistency as to destroy such elements or objects as may come in contact with it. The process of decomposition caused a collection of sediment on the top of the acid and liquid, which, after a time, dried, cracked, and presented the appearance of a solid mass. Mrs. Gotcher, accompanied by three of her children, and other parties, went onto the premises of the defendant in the vicinity of the cesspool to gather persimmons, and, as they approached the pool, Richard Neil, one of plaintiffs' minor children, about seven years of age, turned from the path they were traveling, made a dash for the cesspool, jumped into it, and was drowned. It is alleged that defendant knew, or should have known, that children customarily played in the vicinity of the cesspool; thus there was extended an implied invitation for the mother to enter upon the premises, and the deceased to play in the vicinity of the pool; and that, because of its location,

construction, and the sediment having the general appearance of a baby pool or sand pile usually employed for the amusement of children of tender years, there was created a public and attractive nuisance which was especially attractive to plaintiffs' child. Appropriate allegations were made for monetary damages for the death of the minor, resulting from negligence in the construction and maintenance of the public and attractive nuisance, and specially for negligence, in the following particulars: (1) In not maintaining signs in the vicinity of the cesspool to apprise those passing near it of its location; (2) in failing to have a fence around the cesspool to exclude individuals, and particularly minors; (3) in failing to have a shed built over the cesspool to prevent individuals, and particularly minors, from going upon same; (4) in having the cesspool located at a place frequented by children; and (5) by not skimming off or removing the sediment collected in the pool, and permitting same to become thick, thus presenting the general appearance of sand.

The question as to whether the petition is good as against general demurrer is fraught with difficulty. Many authorities and text books are listed in appellants' brief holding, to the effect, that municipal corporations creating or permitting nuisances by nonfeasance, or misfeasance, are guilty of tort and liable for damages, which torts cannot be avoided on the ground that the municipality was exercising governmental powers. McQuillin on Municipal Corporations, Vol. 6, Sec. 2871, p. 1235; 43 C.J., sec. 1734, p. 956; 30 T. J., Sec. 296, p. 537; Vanderford v. City of Houston, Tex. Civ.App., 286 S.W. 568; Wiggins v. City of Fort Worth, Tex.Civ.App., 299 S.W. 468. Id., Tex.Com.App., 5 S.W.2d 761. Indeed, the rules generally announced are in cases where the nuisances were created at a public place, or in the vicinity thereof, or in a public park where people generally resort for recreation or pleasure; however, the cities in such cases were exercising governmental functions. If the functions exercised in a public place create a nuisance and the city is not protected because of the powers exercised, then, by the same token, it seems the governmental functions would not bar recovery for a nuisance at any private or secluded place. Cities are also held liable for depreciation in value of land and for physical discomfort resulting from nuisances in the exercise of governmental functions, in the

operation of sewerage plants. City of Wylie v. Stone, Tex.Civ.App., 16 S.W.2d 862, Id., Tex.Com.App., 34 S.W.2d 842. But it will be noted in such cases, the decisions are bottomed on the inhibition of the Constitution, both Federal and State, that property cannot be appropriated without due compensation, even though appropriated in the exercise of governmental functions. Damage and depreciation of property is taking property, for which the governmental agents are held liable. Such is the case of Wylie v. Stone, supra, and authorities therein cited, wherein Judge Looney, speaking for this Court, said [16 S.W.2d 864]: "That damages for depreciation in value of land and for physical discomfort resulting from a nuisance may be recovered in the same action is well settled in this state."

A rather exhaustive collation of authorities is presented by plaintiffs' brief, holding that immunity of municipal corporations from liability, for things done in the performance of governmental functions, does not extend to injury or death resulting from nuisance created or maintained by a municipality. It would seem from some authorities that cities, exercising the powers conferred upon them for the purposes essentially public, pertaining to the construction and operation of water and light plants, building streets and sidewalks, constructing storm sewerage, and the like, where injury or death results from negligence, cannot escape liability because of such operation being exercised as governmental functions. Texas Employers' Ins. Ass'n v. City of Tyler, Tex.Civ.App., 283 S.W. 929; Jones v. City of Texarkana, Tex.Civ.App., 100 S.W.2d 198; City of Amarillo v. Ware, 120 Tex. 456, 40 S.W. 2d 57; City of Pittsburg v. Smith, Tex.Civ. App., 230 S.W. 1113; City of Dallas v. Early, Tex.Civ.App., 281 S.W. 883; Brewster v. City of Forney, Tex.Civ.App., 196 S.W. 636; Lenzen v. City of New Braunfels, 13 Tex.Civ.App. 335, 35 S.W. 341.

Cities organized under the general law, as in the case at bar, acquire their rights to own and operate sewerage systems, as well as water, light and gas plants, by virtue of Art. 1015, R.C.S.1925. If the operation of a sewer system is governmental, then it seems that the operation of gas, light and water systems authorized by the same article of the statute, are likewise governmental. No useful purpose could be served here by discussing or citing other authorities.

We think the allegations in the case at bar are controlled by the holdings in recent cases to the effect that, cities are exercising governmental powers when engaged in sanitation, the establishment and maintenance of sewerage, the operation of hospitals, the prevention of crime, the maintenance of fire departments, the enforcement of quarantine regulations, and thus are not liable to one injured by the negligence of the city employe engaged in the performance of such duties.

In the case of the City of Wichita Falls v. Robison, 121 Tex. 133, 46 S.W.2d 965, 966, Robison was injured while at work in the sanitation department of the City of Wichita Falls, resulting from alleged negligence on the part of the City in various particulars. A general demurrer was sustained to the petition. The Supreme Court, in passing on the appeal, said:

"The city contends that it is affirmatively shown upon the face of defendant in error's petition that he was employed by the city to perform duties involving a governmental function of the city, that the sanitation of the city is a governmental function, and that the city is not liable for negligent acts of its officers and agents while discharging such governmental functions. * * *

"It is well settled by the decisions of this court, as well as by those in other jurisdictions, that sanitation for the public health of a city is a governmental function, and that, when a city is exercising such power, it is not liable for injuries inflicted through the negligence of its officers and employees. Whitfield v. City of Paris, 84 Tex. 431, 19 S.W. 566, 15 L.R.A. 783, 31 Am.St.Rep. 69; White v. City of San Antonio, 94 Tex. 313, 60 S.W. 426; McQuillin on Municipal Corporations (2d Ed.) vol. 6, pp. 775, 776, 784, 785, and 788."

In the case of Ballard v. City of Fort Worth, Tex.Civ.App., 62 S.W.2d 594, Ballard received injuries while at work for the city in one of its pipes of the city sewerage line, through negligence of the city in the operation and maintenance of its sewerage system. Judge Conner, of the Fort Worth Court of Appeals, followed the Wichita-Robison decision. And then, too, in the City of Dallas v. Smith, 130 Tex. 225, 107 S.W.2d 872, 878, in which the plaintiffs sought damages on account of the death of their daughter, alleged to have been caused by the negligence of the superintendent and other employes of the city in

**364**

a city-owned and operated hospital, for profit. Judge Smedley, for the court, collated many authorities holding, in effect, that the city was exercising governmental powers, engaged in a function intended for the health of those residing in the city, and the mere allegation that the hospital was operated by the City of Dallas for profit, that it made a charge to all patients entering the same for medical treatment and hospital service, does not change its status as a charitable institution, and does not change the character of the hospital from governmental to proprietary. The court said: "* * * the statutes [Art. 4478, etc.] relating generally to cities and article 1175 enumerating the powers of home-rule cities authorize cities in general terms to do all things necessary or expedient for the promotion of health and to establish and maintain hospitals, with no suggestion that they may establish or maintain hospitals as business institutions or for revenue purposes. We think that cities are given the power to establish and operate hospitals in order that they may efficiently act as agents of the public in the promotion of the public health and not to enable them to exploit for private and corporate gain the misfortunes of the physically afflicted, and that the statutes do not authorize them to establish or maintain hospitals for revenue or for corporate gain."

■ If cities are exercising governmental powers when operating hospitals, for the sake of the citizens, then surely they are exercising governmental functions when they maintain and operate sewerage systems for the sanitation of the city and also for the health of its citizens.

■ There is another fatal element involved in this appeal. The mother and children were trespassers, or licensees on the premises of the city. They entered upon the premises without the knowledge or consent of the city officials. The mere fact that children generally play at the place does not relieve trespassers of the assumption of the risk incident to their going onto the premises. A trespasser is defined by 45 Corpus Juris, 740, as follows: "A person is a trespasser where he enters upon the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in the performance of any duty to the owner or person in charge or on any business of such person, but merely for his own purposes, pleasure, or convenience, or out of curiosity, and without any enticement, allurement, inducement, or express or implied assurance of safety from the owner or person in charge." Plaintiffs' petition admits that the mother and child entered upon the premises without any express invitation of defendant, and while foraging for persimmons, a purpose of their own. The sewerage disposal plant was located on defendant's premises, remote from plaintiffs' residence and public places, and its location was unknown to the mother until the time of the unfortunate occurrence. Therefore, when they went upon the premises under the circumstances, the law is well settled that they assumed the risk of danger. Dobbins v. Missouri, K. & T. Ry. Co., 91 Tex. 60, 41 S.W. 62, 38 L.R.A. 573, 66 Am.St.Rep. 856; Mendoza v. Tex. & P. Ry. Co., Tex.Civ.App., 70 S.W.2d 261; Texas-Louisiana Power Co. v. Webster, 127 Tex. 126, 91 S.W.2d 302; City of Greenville v. Pitts, 102 Tex. 1, 107 S.W. 50, 14 L.R.A.,N.S., 979, 132 Am.St. Rep. 843.

In deference to the authorities, we believe no reversible error is shown in the action of the trial court in sustaining the demurrer. The judgment is affirmed.

Affirmed.