## SARAH F. OSTROM v. CITY OF SAN ANTONIO.

No. 1012. Decided May 16, 1901.

**1. Cities—Liability for Acts of Officers.**

In cleaning its streets and disposing of garbage a city acts for the benefit of its own people, and not in discharge of a duty to the general public, primarily resting on the State, and is liable for damages caused by the unlawful acts of its officers in so doing. (P. 525, 526.)

**2. Same—Trespass.**

A city was liable for damages caused by trespass of its employes in continuing to use plaintiff's premises as a way for hauling garbage to a dumping ground after an injunction prohibiting such use by the city. (Pp. 524-526.)

ERROR to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Sarah F. Ostrom sued the city of San Antonio, and judgment being given for defendant, plaintiff appealed, and on affirmance obtained writ of error.

*Edward Ostrom* and *James Routledge,* for plaintiff in error.—The Court of Civil Appeals committed an error of law in holding that "there was no proof that the city directed or authorized the use alleged of this road as a route for wagons and carts used by its employes for carrying the garbage of the city to the dumping grounds," and that "the utmost that could be said of the testimony in favor of plaintiff is that the superintendent of street cleaning and sanitation of the city gave direction for, or encouraged, the use of this particular route, there being other practicable routes as the evidence showed," and in affirming the judgment on that ground.

As to construction of the evidence: City of San Antonio v. Mackey, 36 S. W. Rep., 761; City of Ysleta v. Babbitt, 28 S. W. Rep., 703; City of Weatherford v. Lowery, 47 S. W. Rep., 34; City of Hillsboro v. Ivey, 2 S. W. Rep., 1013; 1 Suth. on Dam., p. 749; Railway v. Simons, 25 S. W. Rep., 998; Fowlds v. Evans, 54 N. W. Rep., 743.

As to power to review ruling of Court of Civil Appeals, that there was "no proof" upon a question: Bank v. Bank, 49 S. W. Rep., 369; Land Co. v. McClelland, 23 S. W. Rep., 1101.

The Court of Civil Appeals committed an error of law in holding, in substance and effect, that the cleaning of its streets and the removal of the garbage or accumulation of refuse matter therefrom by the city was not an act of mere corporate concern for the special advantage or

profit to it; but was an act of general government, for wrongs committed in the discharge of which it would not be liable, unless it constituted a nuisance; and that under the facts in this case, the city was not liable for the acts done, and affirming the judgment on these grounds. City of San Antonio v. Mackey, 36 S. W. Rep., 761; Quill v. City of New York, 55 N. Y. Supp., 889; Const. of Texas, art. 3, sec. 48; Missano v. City of New York, 54 N. E. Rep., 744; Barney v. City of New York, 40 Fed. Rep., 50; Engle v. City of New York, 40 Fed. Rep., 51; Burditt v. Swenson, 17 Texas, 502; 3 Suth. on Dam., p. 394, 395; Const. of Texas, art. 1, sec. 17; U. S. Const., amend. art. 5.

*George C. Altgelt*, for defendant in error.—The city of San Antonio is not liable for the acts of cart drivers in its employ in driving over plaintiff's land.

BROWN, Associate Justice.—Sarah F. Ostrom sued the city of San Antonio in the court of the Thirty-seventh District, alleging in substance that in that court on the 24th day of November, 1897, she recovered a judgment against the city which established her title to all of lots 12 and 13, district 1, range 3, of the said city, and that the said court entered up a judgment enjoining and prohibiting the city of San Antonio from thereafter using any part of the said lots as a public highway, road, or street. That from and after the day the said decree was entered to the time of filing the suit on the 23d day of November, 1899, the city of San Antonio continued, in defiance of the said decree and against the protests of the plaintiff, to use the said lots as a highway for its carts hauling the garbage of the said city. She alleged her damages at the sum of $5000. The city pleaded a general denial. The case was tried before the judge without a jury and judgment was entered that the plaintiff take nothing by her suit. A statement of facts was filed by the judge, but no conclusions of fact or law are contained in the record. The Court of Civil Appeals affirmed the judgment of the District Court on the following grounds: "(1) There was no proof that the city directed or authorized the use alleged of this road as a route for wagons and carts used by its employes for carrying the garbage of the city to the dumping grounds; (2) the service which the city undertook to render in removing garbage is not one undertaken for special advantage or profit to the city, nor an act of strictly corporate concern. It is a service performed in the interest of the public at large."

The undisputed evidence shows that the city had, prior to the entry of judgment in the first suit, claimed the right to use this property as a roadway or street for hauling garbage with the same class of carts and employes, which contention was decided against the city; and after the city had been enjoined, the use of the land by the carts and employes of the city for the same purpose was continued without intermission, against the protests and over the objections of the plain-

tiff. That a fence was placed across the roadway so as to prevent the entry upon this land, which was torn down by the foreman of the carting gang, and the use was continued as before. That when the passage over the land was obstructed by the plaintiff, the police of the city arrested her for so doing. The superintendent of this class of work for the city testified that the men who were doing the hauling came to him to know how they would get to the dumping ground, and he did not direct them to go over the plaintiff's ground, but told them "to get there the best way they could."

The persons who trespassed upon the plaintiff's land were in the employ of the city, and, if engaged in the discharge of work for which the city would be responsible, whether its officers directed it would be immaterial, and if the work being done was of the class for which the city was not liable, direction by officers would not make it liable. The evidence in this case shows without dispute that the superintendent of the work knew that the employes of the city were using plaintiff's land and he did not attempt to prevent it. Any one who reads the facts must conclude that the men engaged in the trespass would, under the directions given, understand that they were not forbidden to pursue the same course as before. The facts show an oppressive treatment of the plaintiff by the city's employes and a disregard of her rights, as well as a violation of the decree of the District Court, and unless the city was exempt by law from liability for the acts of its employes, the district judge should have entered judgment in favor of the plaintiff for such damages as the testimony established in her favor, which could not have been less than nominal damages and the costs of the suit.

The rules of law which must govern in determining the rights of the parties in this case are clearly stated by Chief Justice Gaines in White v. City of San Antonio, as follows: "A municipal corporation proper —a city, for example—acts in a twofold capacity. Certain functions are conferred upon it in the interest of the public at large and certain others for the peculiar advantage of its own inhabitants. For the unlawful acts of its officers in performing functions of the former class, the corporation is held as a rule, not to be responsible; but for their torts in discharging duties of a purely corporate character, the corporation is liable." *Ante,* p. 313. The question for us to determine is, to which of the two classes of powers expressed in the foregoing citation does the act performed in cleaning the streets of San Antonio belong? In the case of the City of Galveston v. Posnainsky, 62 Texas, 127, Judge Stayton, for the court, said: "It would seem that, in so far as municipal corporations of any class and however incorporated exercise powers conferred on them for purposes essentially public,—purposes pertaining to the administration of general laws made to enforce the general policy of the State,—they should be deemed agencies of the State and not subject to be sued for any act or omission occurring while in the exercise of such power, unless, by statute, the action be given; that, in reference to such matters, they

should stand as does sovereignty, whose agents they are, subject to be sued only when the State by statute declares they may be.   *   *   * In so far, however, as they exercise powers not of this character, voluntarily assumed,—powers intended for the private advantage and benefit of the locality and its inhabitants,—there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage to which an individual or private corporation exercising the same powers for a purpose essentially private would be liable."

In what sense can it be said that the cleaning of the streets of San Antonio was a duty that primarily rested upon the State of Texas? We know of no principle of law upon which such duty can be based, nor any case which has so held, nor any instance in which such power has been exercised by the State for the benefit of the general public, and we must conclude that it does not fall within that class of cases which are specified as being powers to be exercised for the good of the general public imposed upon a municipal corporation for enforcement within its limits.   The law imposed the duty of cleaning the streets upon the city of San Antonio within its own limits primarily and especially for the benefit of its own people.   It is strictly a corporate function for the abuse of which by its agents in the course of their regular employment the city must be held liable.   Lloyd v. New York, 5 N. Y., 375; Quill v. New York, 55 N. Y. Supp., 889; Missano v. New York, 54 N. E. Rep., 744; Barney v. City of New York, 40 Fed. Rep., 50; Engle v. Mayor, 40 Fed. Rep., 51; City of Fort Worth v. Crawford, 64 Texas, 202; 15 Am. and Eng. Enc. of Law, p. 114.   We can see no difference upon the question of liability between this case and Fort Worth v. Crawford.   If the disposition of garbage, dead animals, and the like in that case had been considered a function of the State government exercised by officers of the municipal corporation, the court could not have held the city liable for the consequences, and the judgment of this court that the city was liable for the nuisance includes the proposition that the acts were done in execution of a corporate power as distinguished from a governmental function.

The following cases hold a contrary doctrine:   Condict v. Jersey City, 46 N. J. L., 160; Love v. City of Atlanta, 95 Ga., 132; Connelly v. City of Nashville, 46 S. W. Rep.; 565; Kuehn v. City of Milwaukee, 65 N. W. Rep., 1030.

This court has no power to ascertain the damages to which the plaintiff is entitled under the testimony, and therefore can not enter the judgment that the judge of the District Court should have entered, because it is necessary that other facts shall be found, and we therefore reverse the judgment of the District Court and of the Court of Civil Appeals and remand the case to the District Court for further trial.

*Reversed and remanded.*