## CITY OF AMARILLO v. TUTOR et al.
## (No. 471–3904.)

(Commission of Appeals of Texas, Section B.
Dec. 20, 1924.)

**1. Eminent domain ⬤➡69—Municipal corporations ⬤➡723½—Ordinance and statute exempting city from liability for damages unconstitutional.**

Ordinance of city of Amarillo, exempting it from liability for all claims for damages as authorized by home rule statute (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1096a–1096i), and that clause of article 1096d, authorizing such exemption, *held* unconstitutional as authorizing the taking of property without adequate compensation, in violation of Const. art. 1, § 17, and in disregard of the proviso of article 11, § 5, that home rule charters and ordinances shall not contain provisions inconsistent with Constitution or general laws.

**2. Constitutional law ⬤➡48—Statute presumed valid.**

Every presumption is in favor of the validity of a legislative act, and, until it be shown to be plainly and manifestly in conflict with the Constitution, all doubts will be resolved in its favor.

**3. Eminent domain ⬤➡63—Any damage or interference impairing value of property constitutes "taking."**

Any special damage or injury peculiar to the property of an individual, and any interference by a city in the construction of works with any right, public or private, legally enjoyable by the owner or occupant of property by which the value of such property is impaired, is a taking within Const. art. 1, § 17, forbidding the taking of property without compensation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Taking (In Eminent Domain).]

**4. Eminent domain ⬤➡69—Legislature cannot authorize taking of property without compensation.**

The Legislature is powerless to authorize taking of property without compensation, in violation of Const. art. 1, § 17, and is equally powerless to authorize city to violate such provision.

**5. Constitutional law ⬤➡328—Statute and ordinance exempting city from damage claims violative of Bill of Rights.**

Under Const. art. 1, § 13, providing that courts shall be open, and every person shall have redress for injury in due course of law, that clause of Vernon's Sayles' Ann. Civ. St. 1914, art. 1096d, authorizing cities to exempt themselves from liability for damage claims, and a city ordinance attempting to exempt city from such damages, are invalid.

**6. Municipal corporations ⬤➡111(4)—Statutes ⬤➡64(4)—Where invalid provisions are not separable from others, entire ordinance and statute fails.**

The invalid provisions of Vernon's Sayles' Ann. Civ. St. 1914, art. 1096d, and Amarillo city ordinance, passed pursuant thereto, to exempt city from damage claims, *held* so closely interwoven with other provisions as to make entire exemption clauses of both statute and ordinance invalid.

**7. Constitutional law ⬤➡42 — Person not affected cannot question validity of statute.**

One whose rights are not affected by a statute cannot question its validity.

**8. Constitutional law ⬤➡42—One injured by city may question validity of statute and ordinance exempting city from liability.**

One claiming damages for injuries by the negligent construction or maintenance of city public works is so affected by an invalid statute and ordinance exempting the city from liability as to entitle her to question the constitutionality of such statute and ordinance.

**9. Evidence ⬤➡32—Court not authorized by statute to take judicial notice of city ordinances.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 1096d, requiring courts to take judicial notice of charter adopted in carrying out home rule amendment to the Constitution, does not authorize courts to take judicial notice of city ordinances.

**10. Pleading ⬤➡8(2)—Answer by city relying on city ordinance should set out same or state contents sufficient to enable court to pass on claimed exemption.**

A city ordinance relied upon in defense to action for damages should be set out in the answer, or its contents stated sufficiently to enable the court to determine from the provisions of the ordinance whether the city was exempted from liability under the facts alleged; allegations as to effect of ordinance being merely conclusions.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Suit by Ollie May Tutor and husband against the City of Amarillo. From a judgment of the Court of Civil Appeals (244 S. W. 632), reversing an order sustaining defendant's demurrer to the petition, defendant brings error. Affirmed.

C. E. Gustavus, of Amarillo, for plaintiff in error.

P. F. Sapp and A. M. Mood, both of Amarillo, for defendants in error.

HAMILTON, J. Ollie May Tutor, joined by her husband, brought this suit against the city of Amarillo, to recover damages for personal injuries sustained by her. The trial court sustained a general demurrer to plaintiff's petition, and she appeals.

Plaintiff alleged that the city had, at the time of the injury, the exclusive control over the streets at a certain point therein at the intersection of Third and Polk streets; that at such time it was engaged in the operation for hire of a street car line in the city, which was constructed and operated on said streets

just mentioned; that the plaintiff, at about 9 o'clock p. m., approached one of said street cars at the intersection of Third and Polk streets, for the purpose of taking passage thereon; that in so doing she stepped into a hole near the track, and was injured; that the corner of Third and Polk streets, where the accident occurred, was one of the usual and customary places for passengers to board and alight from said street cars; that at this particular place there was a drain or sewer, which had been covered by a loose iron culvert covering; that one of the cars of defendant had caught this covering and moved it from its proper position, leaving a large hole, which abutted the rail of the street car track; that the uncovering of the hole was due to the negligence of the railway company in the construction of the culvert and the street car tracks and the operation of the car so as to catch and remove the covering. We quote the following résumé of the charges of negligence, contained in plaintiff's petition:

"That the negligence and carelessness of defendant, its agents, officers, and servants hereinbefore mentioned, was the direct and proximate cause of plaintiff's fall and her consequent injuries in this: The said hole was opened by the direct act of said defendant, in the operation of its street cars and in the carrying out of its business as a common carrier for profit, and said defendant had full knowledge and notice of said hole and its dangerous character and position in time to guard and protect the public, defendant's passengers, and this plaintiff, from the danger thereof, but negligently failed to guard or protect the public, defendant's passengers, and this plaintiff therefrom, by any means or device suitable thereto, at said crossing and stopping place of said street cars for the purpose of passengers embarking upon and alighting from said cars so operated by said defendant; that defendant was further negligent in failing to keep the said street at the crossing of Polk street open and free from the dangerous hole into which plaintiff fell; that defendant was negligent in failing to provide a street light in, about, or near said hole or said street crossing; that defendant was negligent in constructing and maintaining its tracks and in operating its cars in such manner that it caused said hole to be made in said street in the manner heretofore described; that defendant was negligent in failing to provide a safe place for its passengers to board and alight from its street cars."

In its answer the city pleaded that the inhabitants of the city, long prior to the time of this occurrence, adopted a city charter, which contained the following provision:

"Said city shall have the power to provide for the exemption of said city from liability on account of any claim for damages to any person or property, or to fix such rules and regulations governing the city's liability, as may be deemed advisable."

It further pleaded that in pursuance thereto the defendant, prior to this occurrence, had duly adopted an ordinance, "exempting the city from any and all liability for any injuries to persons or property." The trial court quotes the following ordinance of the city as the basis of his action in sustaining the demurrer to plaintiff's petition, and furnishing defendant exemption from liability in this case:

"That hereafter the city of Amarillo shall be and is hereby declared exempt from any and all liability and damages for any injury or injuries to persons or property caused by or arising from the filling, raising, grading, elevating or improving any property within this city, or caused by or arising from the prosecution of any public improvement, or caused by or arising from the construction, maintenance, or operation of any public utility plant or system, or caused by or arising from the maintenance, operation, or extension of its sewerage system, or caused by or arising from any obstruction, excavation, or any other character of defect whatsoever in any street, alley, sidewalk or other public place in this city, and from any and all liability of any other character of injury to persons or property, howsoever same is caused or produced."

This is the statement of the case made by the Court of Civil Appeals. It is in accord with the record, and its correctness is not questioned in this court. The Court of Civil Appeals reversed the judgment of the trial court, and remanded the cause for trial. 244 S. W. 632.

The city of Amarillo was incorporated under what is commonly known as the home rule statute (articles 1096a to 1096i, V. S. Civ. Statutes 1914), passed in pursuance of section 5 of article 11 of the Constitution as adopted by the people November 5, 1912. The pertinent portion of the constitutional provision reads:

"Cities having more than five thousand (5,-000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature of this state. * * *"

The pertinent portion of article 1096d, V. S. Statutes 1914, c. 17, passed to carry out the provisions of the Constitution from which the above quotation is made, provides:

"That by the provisions of this act it is contemplated to bestow upon any city adopting the charter or amendment hereunder the full power of local self-government, and among the other powers that may be exercised by any such city, the following are hereby enumerated for greater certainty: * * *

"To provide for the exemption from liability on account of any claim for damages to any person or property, or to fix such rules and regulations governing the city's liability as may be deemed advisable."

The exempting portion of the charter has already been set out in the statement of the case. It is in practically the same language as that of the statute. The ordinance on which the trial court founded his judgment of dismissal is set out also in the statement of the case above.

The Court of Civil Appeals based its decision upon its opinion in Green v. City of Amarillo, by the same court, in which the same statute and ordinance involved here was in question. 244 S. W. 241. Speaking through Judge Boyce, the court held that:

"The power of legislation which the Legislature may by implication confer on a municipality is confined to matters of local self-government and police regulations;" that "a law the effect of which would be to exempt the city from liability for damages resulting from its operation of a street railway on the public streets of a city is not a police regulation, or a law of local self-government, and is not a matter of purely local concern. It may operate for the benefit only of the city and its taxpayers; but the streets of the city are public highways, and are used, not only by the citizens of the city, but by the public generally, and such law affects the public at large."

The specific holding was that:

"The ordinance, in so far as it is sought to be applied to the case under consideration, is ineffective."

We do not differ from the Court of Civil Appeals in its holding in either that or this case. Ostrom v. City of San Antonio, 94 Tex. 523, 62 S. W. 909.

[1, 2] But we think the first clause of the statute attempting to authorize cities to exempt themselves from liability is unconstitutional. In so holding, we do so with a full appreciation of and consideration for the rule that every presumption is in favor of the validity of legislative acts. Until a statute be shown to be plainly and manifestly in conflict with the Constitution, all doubts will be resolved in its favor. It will be upheld unless there is a substantial departure from the organic law. Our reasons follow.

It is observed that the Constitution granted to cities having the stipulated population the power to "adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature. * * *"

All that portion of the ordinance which says that the city of Amarillo shall be and is hereby declared exempt from any and all liability and damages for any injury or injuries to * * * property caused by or arising from the acts and pursuits enumerated therein is not only inconsistent with, but is directly contrary to, section 17 of article 1 of the Constitution of Texas, which provides:

"No person's property shall be taken, damaged or destroyed for, or applied to, public use without adequate compensation being made, unless by the consent of such person. * * *"

[3, 4] Any damage or injury peculiar to one's particular property, and not suffered by it as a result of the construction of the public work in common with other properties in the same community, is ground for a judgment fixing liability against the city as well as against a railroad or any other person or corporation doing work of a public nature. Any interference, by the construction of works, with any right, public or private, legally enjoyable by the owner or occupant of property used in connection with such property, and giving an additional market value to such property separate from the use to which any particular owner might put it, forms a legal ground for compensation, guaranteed by the Constitution, if by reason of such interference the property as such is lessened in value. Gulf Coast & S. F. Ry. Co. v. Fuller, 63 Tex. 467; Texas & N. O. Ry. Co. v. Goldberg, 68 Tex. 685, 5 S. W. 824; Texas & Sabine Ry. Co. v. Meadows, 73 Tex. 32, 11 S. W. 145, 3 L. R. A. 565; Fort Worth & Rio Grande Ry. Co. v. Jennings, 76 Tex. 373, 13 S. W. 270, 8 L. R. A. 180; Gainesville, Henrietta & Western Ry. Co. v. Hall, 78 Tex. 169, 14 S. W. 259, 9 L. R. A. 298, 22 Am. St. Rep. 42; Baugh v. Texas & N. O. Ry. Co., 80 Tex. 56, 15 S. W. 587; Texas & Pacific Ry. Co. v. Edrington, 100 Tex. 496, 101 S. W. 441, 9 L. R. A. (N. S.) 998; Ostrom v. City of San Antonio, 94 Tex. 523, 62 S. W. 909. The Legislature itself is powerless to destroy directly by statute the rights which the city ordinance purports to wipe out, and the Legislature is equally powerless to authorize the city to destroy such rights. They are guaranteed by the Constitution of our state.

All that portion of the ordinance attempting to exempt the city of Amarillo from any and all liability and damages for injury or injuries to persons * * * caused by or arising from * * * the operation of any public utility plant or system * * * is contrary to the constitutional provision authorizing the city to adopt its own charter, because that portion of the ordinance is not only "inconsistent with the general laws enacted by the Legislature of this state," but is directly contrary to one such law, at least. Article 6640, Revised Civil Statutes of 1911, being a part of the act of 1897, S. S. p. 14, § 1, provides:

"Every person, receiver, or corporation operating a railroad or street railway, the line of which shall be situated in whole or in part in this state, shall be liable for all damages sustained by any servant or employé thereof while engaged in the work of operating the cars, locomotives or trains of such person, receiver, or corporation, by reason of the negligence of any

other servant or employé of such person, receiver or corporation, and the fact that such servants or employés were fellow-servants with each other shall not impair or destroy such liability."

Under the terms of the ordinance under consideration the city of Amarillo would not be liable for any such damages. Therefore, the very constitutional provision, in pursuance of which the home rule charter of the city of Amarillo was adopted, makes null and void, not only that part of the ordinance, but also the provision of the statute which attempts and is broad enough in its terms to authorize the city to pass such an ordinance. The statute itself, since it authorizes the adoption of a charter, containing powers which are contrary to the general laws of the state, is unconstitutional.

Furthermore, it is to be observed that neither the statute nor the charter provision limits the power of the city in the passage of any ordinance exempting the city from liability. Under the terms of the statute the city is authorized "to provide for the exemption from liability on account of any claim for damages to any person or property." This is an authorization in words to provide exemption from liability for intentional, as well as negligent, acts resulting in injury to persons or property. Likewise, the ordinance attempts to exempt the city from liability for any and all kinds of injury to persons or property caused by or arising from the acts and pursuits enumerated therein. Neither the statute, the charter, nor the ordinance in providing for exemption of the city from liability uses the word "negligent" or "negligence." Willful and intentional damage and destruction of property, wounding, maiming, crippling, and killing of any person, whether an inhabitant of Amarillo or not, who happens to be in Amarillo by the city officials, the city employees, servants, and agents are legitimated by the statute, the charter, and the ordinance, in so far as liability of the city for damages for such willful and intentional acts is concerned, and every claim for damages against the city of Amarillo for such actions is stifled and smothered.

[5] Such an ordinance and statute attempting to authorize it is unconstitutional and void because in contravention of the Bill of Rights (section 13, art. 1 of the Constitution), which provides that:

"* * * All courts shall be open; and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."

It is not to be doubted that the Legislature is without the power to deny a citizen the right to resort to the courts for redress of any intentional injury to his person by another. Middleton v. Texas Power & Light Co., 108 Tex. 96, 109, 185 S. W. 556.

[6] The terms of the statute, being such as to include intentional acts, and therefore necessarily also include negligent acts, do not enable us to uphold the statute, because this case happens to be one based upon negligence, and not upon intention. If any of the exemptions from liability of the city of Amarillo from damages embraced in the comprehensive terms of the ordinance and the statute are such as might have been provided for by a proper statute and a proper ordinance, nevertheless, such exemptions must go down with the statute, because they are so interwoven with unconstitutional grounds of exemptions that they cannot be separated. It is true that municipal ordinances like statutes may be void in some of their provisions and not void as to others, but in such case the portion of a statute or of an ordinance which is invalid must be distinctly separable from the valid portion which in itself must contain the essentials of a complete enactment.

[7, 8] It is the rule that one whose rights are not affected by the statute will not be heard to question its validity. There is a long line of decisions by the Supreme Court of the United States, holding that:

"A party insisting upon the invalidity of a statute as violating any constitutional provision must show that he may be injured by the unconstitutional law before the courts will listen to his complaint." Hooker v. Burr, 194 U. S. 415, 24 S. Ct. 706, 48 L. Ed. 1046, and authorities cited.

The converse of this is equally true. One whose rights are affected by the operation of a statute may question its validity. If the clause of the statute which we think invalid is of no effect, then the defendant in error has stated in her petition a legal right to recover. The trial court held, because of the statute and ordinance, that her petition did not state a cause of action, and, if it is a valid enactment, the holding was correct. The effect of the statute, if in force, is to deny to defendant in error a right which otherwise she would have. This is sufficient to entitle her to raise the question of its validity. State ex rel. Holliday v. O'Leary, 43 Mont. 157, 167 et seq., 115 P. 204.

In State v. Bengsch, 170 Mo. 81, 114, 70 S. W. 710, 719, the Supreme Court of that state, in considering an indictment which did not charge defendant with manufacturing either distilled or vinous liquors, held the statute unconstitutional because it contained those provisions, saying:

"And, although defendant is not prosecuted as a manufacturer of either distilled or vinous liquors, yet if it is apparent on the face of the act that it was framed and enacted as an entirety, and would not have received the legislative sanction but for the fact that it was intended to operate as a whole, then, this being the case, any party prosecuted under the challenged act may raise the question of the unconstitutionality of a portion of the act in the circumstances already related, and thereby

show the invalidity of the whole. We hold the whole act must go by the board in consequence of those circumstances."

In United States v. Reese, 92 U. S. 214, 23 L. Ed. 563, there was presented an indictment containing four counts, under sections 3 and 4 of the Act of May 31, 1870 (16 Stat. at L. 140), against two of the inspectors of a municipal election in the state of Kentucky, for refusing to receive and count at such election the vote of William Garner, a citizen of the United States, of African descent. All questions presented arose upon general demurrers to the several counts of the indictment. The court in the opinion states:

"The principal question left for consideration is whether the act under which the indictment is found can be made effective for the punishment of inspectors of elections who refuse to receive and count the votes of citizens of the United States, having all the qualifications of voters, because of their race, color, or previous condition of servitude. * * *

"The fourth section [of the statute] provides for the punishment of any person who shall, by force, bribery, threats, intimidation, or other unlawful means hinder, delay, etc., or shall combine with others to hinder, delay, prevent, or obstruct, any citizen from doing any act required to be done to qualify him to vote, or from voting, at any election."

In considering that section the court said:

"When we go beyond the third section, and read the fourth, we find there no words of limitation, or reference even, that can be construed as manifesting any intention to confine its provisions to the terms of the Fifteenth Amendment. That section has for its object the punishment of all persons, who, by force, bribery, etc., hinder, delay, etc., any person from qualifying or voting. In view of all these facts, we feel compelled to say that, in our opinion, the language of the third and fourth sections does not confine their operation to unlawful discriminations on account of race, etc. If Congress had the power to provide generally for the punishment of those who unlawfully interfere to prevent the exercise of the elective franchise without regard to such discrimination, the language of these sections would be broad enough for that purpose.

"It remains now to consider whether a statute, so general as this in its provisions, can be made available for the punishment of those who may be guilty of unlawful discrimination against citizens of the United States, while exercising the elective franchise, on account of their race, etc.

"There is no attempt in the sections now under consideration to provide specifically for such an offense. If the case is provided for at all, it is because it comes under the general prohibition against any wrongful act or unlawful obstruction in this particular. We are therefore directly called upon to decide whether a penal statute enacted by Congress, with its limited powers, which is in general language broad enough to cover wrongful acts without as well as within the constitutional jurisdiction, can be limited by judicial construction so as to make it operate only on that which Congress may rightfully prohibit and punish. For this purpose we must take these sections of the statute as they are. We are not able to reject a part which is unconstitutional, and retain the remainder, because it is not possible to separate that which is unconstitutional, if there be any such, from that which is not. The proposed effect is not to be attained by striking out or disregarding words that are in the section, but by inserting those that are not now there. Each of the sections must stand as a whole, or fall altogether. The language is plain. There is no room for construction, unless it be as to the effect of the Constitution. The question, then, to be determined, is whether we can introduce words of limitation into a penal statute so as to make it specific, when, as expressed, it is general only.

"It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government. The courts enforce the legislative will when ascertained, if within the constitutional grant of power. Within its legitimate sphere, Congress is supreme, and beyond the control of the courts; but if it steps outside of its constitutional limitations, and attempts that which is beyond its reach, the courts are authorized to, and when called upon in due course of legal proceedings, must, annul its encroachments upon the reserved power of the states and the people.

"To limit this statute in the manner now asked for would be to make a new law, not to enforce an old one. This is no part of our duty."

This view has been repeatedly approved in subsequent cases. United States v. Harris, 106 U. S. 629, 1 S. Ct. 601, 27 L. Ed. 290; Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550; Virginia Coupon Cases, 114 U. S. 305, 5 S. Ct. 903, 962, 29 L. Ed. 185.

[9] Article 1096c provides that a charter adopted in pursuance of the statutes carrying out the "home rule" amendment to the Constitution " * * * shall be deemed a public act and all courts shall take judicial notice of same and no proofs shall be required of same. * * *" But there is no provision of the statutes authorizing the courts to take judicial notice of city ordinances.

[10] The defendant's answer quotes the charter provision concerning exemption from liability, and then alleges "that in pursuance, and as authorized by the statutes of this state and said charter provision, this defendant did, on or about May 4, 1919, duly pass, adopt, and put in force and in operation Ordinance No. 281, exempting the city from any and all liability and damages for any injuries to person or property, and defendant alleges that the cause of action claimed by plaintiff is within the terms of said ordinance, and by reason of said exemption defendant is not liable to the plaintiff.

Defendant attaches hereto a substantial copy of said ordinance, marked Exhibit A, here referred to and made a part hereof." The transcript in the cause shows no such exhibit, and there appears to have been no copy of the ordinance attached thereto as stated in the answer. If so, the record fails to reveal it. The averments concerning the ordinance and its effect as they stand were merely conclusions of law, and were not sufficient. The ordinance should have been set out, or its contents should have been stated fully enough to enable the court to judge from the provisions of the ordinance itself whether the ordinance exempted the city from liability under the facts alleged in the petition. City of Austin v. Walton, 68 Tex. 507, 5 S. W. 70; Light & Power Co. v. Lefevre, 93 Tex. 604, 607, 57 S. W. 640, 49 L. R. A. 771, 77 Am. St. Rep 898; I. & G. N. Ry. Co. v. Hall, 35 Tex. Civ. App. 545, 81 S. W. 82.

We recommend that the judgment of the Court of Civil Appeals reversing the judgment of the trial court and remanding the cause be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.