## CITY OF FORT WORTH v. WIGGINS et al.
(No. 917—4999.)*

Commission of Appeals of Texas, Section B.
May 2, 1928.

**1. Municipal corporations** ⬅️745½—**Municipality is not liable for negligence of agents, servants, or employees in performance of duty as representatives of state; "governmental function."**

In so far as municipal corporation represents state or public at large in performance of a duty, it is "governmental function" for which municipality is not liable because of negligence of its agents, servants, or employees.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Governmental Function.]

**2. Municipal corporations** ⬅️745½—**Municipality acting in private capacity as corporation is liable for negligence of its representatives.**

Where municipality acts, not as a governmental agent, but in its private capacity as a corporation, it is liable for the negligence of its representatives precisely the same as an individual would be.

**3. Municipal corporations** ⬅️745½—**Exemption of municipality from liability for negligence of representatives pertains only to acts or functions performed as agent of state.**

Exemption of municipality from liability for negligence of its representatives pertains only to those acts or functions which are performed as the agent of the state in furtherance of general law for the interest of public at large, as contradistinguished from its acts and functions intended primarily for the benefit of that portion of the public within corporate limits of municipality.

**4. Municipal corporations** ⬅️851—**Municipality maintaining vicious bear in park held liable for injury to child resulting from negligence in construction and maintenance of cage.**

Municipality maintaining vicious bear in public park *held* liable for injury to child resulting from negligence in construction and maintenance of cage wherein bear was kept, whether or not municipality acted in govern-

mental or individual capacity, since maintenance of bear under such circumstances constituted a nuisance, even though act were governmental.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by E. J. Wiggins, for himself and as next friend for his minor son, Jack Wiggins, against the City of Fort Worth. Judgment for defendant was reversed by the Court of Civil Appeals (299 S. W. 468), and defendant brings error. Affirmed.

R. E. Rouer and F. G. Coates, both of Fort Worth, for plaintiff in error.

Bryan, Stone, Wade & Agerton, of Fort Worth, for defendant in error.

SPEER, J.   The case is thus stated by Chief Justice Conner for the Court of Civil Appeals for the Second District (299 S. W. 468):

"Appellant, for himself and as next friend for his minor son, Jack Wiggins, instituted this suit against the appellee city for damages, on grounds hereinafter set out, and has duly prosecuted this appeal from an order sustaining the city's general demurrer to the petition setting forth the plaintiffs' cause of action.

"In said petition, omitting formal parts, it is charged, in substance, and as quoted, that the defendant city is a municipal corporation, duly incorporated and existing under the laws of Texas, having a mayor, city council, and other officers; that the defendant, within its corporate limits, owns, and maintains a 'public park known as Forest Park,' within which the city had collected a number of animals 'known to be wild and dangerous,' including several bears; that on May 1, 1925, the minor plaintiff, Jack Wiggins, then 8 years of age, was in said park and on one of the public walks immediately in front of a cage occupied by a 'large, ferocious, and dangerous bear, belonging to and maintained by the defendant, which animal was known to the defendant to be wild, dangerous, and ferocious,' and that, while said minor was standing on the walk and in front of said cage which confined said bear, it reached its fore foot and leg through the wire netting constituting the wall of the cage, and seized and drew the left leg and foot of said minor child through the cage and thereupon tore, cut, and chewed a large part of the flesh from that part of the boy's leg below the knee, and entirely severed the tendons of the fore part of the leg, thus causing excruciating physical, mental, and nervous pain, and permanently injured and deformed the boy; that the flesh and tendons thereof cannot and will not grow back and be restored to a normal condition, and that as a result the said minor can walk on said foot only by the use of an iron and leather brace and support, and then only in an awkward and imperfect manner; that he cannot take exercise, run, and move about as a normal child, and his foot and leg and the use thereof have become permanently and irreparably impaired.

"It was further alleged that the defendant, at the time of the accident mentioned, and for a long period of time theretofore, had failed to maintain in front of this particular cage any suitable barrier or fence, but on the contrary at this particular spot the defendant had left an opening in the outer barrier or fence approximately 12 inches in width, through which opening said bear could and in fact did reach through and seize persons standing near said opening, and did reach through and seize plaintiff's son, Jack Wiggins; that the cage and outer fence hereinabove mentioned were erected by the defendant; that the defendant at all times knew that said cage was constructed of wire too small to resist the efforts of said animal to reach through the cage, and knew at all times that the holes and meshes in said wire netting were so large as to permit said animal to extend its foot and leg through the same, and knew at all times that the wires constituting said netting were insufficiently fastened to each other, and were insufficiently fastened to the upright and horizontal bars constituting the framework of said cage, and knew that the outer fence or gate immediately in front of this cage contained the large openings mentioned; and it was further charged that the conduct of defendant in so constructing and maintaining said cage and outer fence was negligent; and it was further negligent in failing to close such opening in the outer fence and in failing to close the large holes in the wire netting constituting the walls of the cage.

"It was further alleged that the defendant kept said wild, vicious, and ferocious animal in a cage exposed to public view, and knew that at all times the cage would be attractive and visited by women and children of immature age, and that the conduct of defendant as alleged 'was negligent and that such conduct constituted and is affirmative negligence of said municipality, and said negligence resulted in creating a public nuisance and essentially dangerous condition, and that defendant knowingly permitted such nuisance and essentially dangerous condition to exist in said public park at a place and under circumstances calculated to cause injury to the members of the public who might be in said park.'

"It was further alleged that the negligence charged was the proximate cause of the injury, and the prayer was for the recovery of the sum of $1,500, expended by plaintiff E. J. Wiggins in the way of doctors' and hospital bills, nurses' hire and medicine, and the further sum in the way of damages of $25,000, in that he will be deprived of the services of his son during minority. In behalf of the minor son, the prayer was for the sum of $25,000, caused and to be caused by reason of the permanent impairment and deformity of his leg, etc.

"The defendant city appeared and answered by a general demurrer and a general denial. Upon the call of the case, on January 24, 1927, the city's general demurrer was presented, and the court after having heard and considered the same, sustained it, and, the plaintiffs having declined to amend, it was further ordered that the suit be dismissed, to all of which the plaintiffs excepted and have duly prosecuted this appeal."

The Court of Civil Appeals reversed the judgment of the trial court upon the holding "that the construction of the cage described in the petition and the maintenance of the

dangerous animal therein, constitutes a dangerous condition and situation that may be properly termed a nuisance." That court apparently repudiated the appellant's contention that the city was liable in its proprietary capacity, or at least waived a decision of that point and based its reversal upon the exception to the rule of nonliability of a municipal corporation in the performance of a governmental function; that is, the creation and maintenance of a nuisance. 299 S. W. 468.

There has been much conflict generally throughout the country as to the precise limits of the liability of a municipal corporation for the negligence of its agents and servants, to some extent amongst the decisions in our own state, and it was because of this conflict the writ was granted in this case.

[1, 2] There is no contrariety in the holding that, in so far as the municipal corporation represents the state or public at large in the performance of a duty, it is a governmental function for which the municipality is not liable for the negligence of its agents, servants, or employees. On the other hand, there is equal uniformity of decision that, where the municipality acts, not as a governmental agent, but in its private capacity as a corporation, it is liable for the negligence of its representatives precisely the same as an individual would be. The difficulty is not in statement of the principles, but in the application of these recognized rules to the particular case in hand.

In Conway v. City of Beaumont, 61 Tex. 10:

"It is said by all the text-writers and by many eminent judges, that no rule on this subject can be so precisely stated as to embrace all the torts for which it has been held by some court or another that a private action will lie against a municipal corporation. All that can be done with safety is to determine each case on its own facts as it arises. * * * The rule is sometimes laid down by the text-writers in general terms to this effect: that where the act complained of was done in discharge of some duty that was public in its character, and not private, then the corporation cannot be held liable."

But this is a most general statement of the principles applicable and is of little value in the determination of any concrete case. It is of course true that no fixed rule can be stated to cover all cases alike, but it is hardly accurate to say that "all that can be done with safety is to determine each case on its own facts as it arises." It is necessary at least to cast general rules or classifications that are of controlling effect, and this we take it to be has subsequently been done in the decisions in this state.

In City of Galveston v. Posnainsky, 62 Tex. 118, 50 Am. Rep. 517, the Supreme Court discussing this question said:

"It would seem that, in so far as municipal corporations of any class, and however incorporated, exercise powers conferred on them for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of the state—they should be deemed agencies of the state, and not subject to be sued for any act or omission occurring while in the exercise of such power, unless, by statute, the action be given; that, in reference to such matters, they should stand as does sovereignty, whose agents they are, subject to be sued only when the state, by statute, declares they may be. * * * In so far, however, as they exercise powers not of this character, voluntarily assumed—powers intended for the private advantage and benefit of the locality and its inhabitants—there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage to which an individual or private corporation exercising the same powers for a purpose essentially private would be liable."

Here is the first distinctive effort to differentiate governmental and proprietary functions. It will be observed, to be governmental the purposes of the act must be "essentially public, purposes pertaining to the administration of *general laws* made to enforce the *general policy of the* state"; while the powers which are classed as proprietary are such as are "not of this character, voluntarily assumed, powers intended for the private advantage and *benefit of the locality and its inhabitants*."

In Whitfield v. City of Paris, 84 Tex. 431, 19 S. W. 566, 15 L. R. A. 783, 31 Am. St. Rep. 69, it is said:

"Where a city acts as the agent of the state, it becomes the representative of sovereignty. It is not acting in the management of its private or corporate concerns, but in the interest of the public, and as the guardian of the health, peace, convenience, and welfare of the public. Under such circumstances, it is not liable for the acts of its officers or employees engaged in the execution of its ordinances."

Justice Brown, later Chief Justice, in Ostrom v. City of San Antonio, 94 Tex. 523, 62 S. W. 909, wrote:

"A municipal corporation proper—a city, for example—acts in a twofold capacity. Certain functions are conferred upon it in the interest of the public at large and certain others for the peculiar advantage of its own inhabitants. For the unlawful acts of its officers in performing functions of the former class, the corporation is held as a rule, not to be responsible; but for their torts in discharging duties of a purely corporate character, the corporation is liable."

This in turn was a quotation from Chief Justice Gaines in White v. City of San Antonio, 94 Tex. 313, 60 S. W. 426. Justice Brown then quotes the language of Judge Stayton in City of Galveston v. Posnainsky, already quoted by us. He goes on to say:

"The law imposed the duty of cleaning the streets upon the City of San Antonio within its own limits primarily and especially for the

benefit of its own people. It is strictly a corporate function for the abuse of which by its agents in the course of their regular employment the city must be held liable."

This case is quoted with approval in Cawthorn v. City of Houston, 231 S. W. 701, by the Commission of Appeals, which is expressly approved by the Supreme Court.

[3] Of course, in a general sense every function of a municipal corporation is in the interest of, and as an agent for, the public, and therefore governmental in its nature. But it is not in this broad sense that the classification exists. To be exempt, the corporation must be performing a duty imposed upon it as the agent of the state in the exercise of a *strictly* governmental function, *solely* for the public benefit. McQuillin Mun. Corp. § 2623. From the quotations above it is clear that the exemption from liability pertains only to those acts or functions which are performed as the agent of the state in the furtherance of *general law* for the interest of the *public at large* as contradistinguished from those acts and functions intended primarily for the benefit of that portion of the public within the corporate limits of the municipality. It is only in this sense that a municipal corporation can perform proprietary functions in any case, or at all. We take it to be the true rule, if the act or function involves, in any substantial degree or to any material extent, the serving of its own inhabitants, and therefore private purposes, in respect not undertaken by general law, that liability for negligence exists.

It is only upon this theory of the classification that liability exists against municipal corporations for negligence with respect to the construction and maintenance of its public streets. No one can deny that in a general sense the construction and maintenance of public streets are in the interest of the general public as contradistinguished from the inhabitants of the city, and therefore in such sense a governmental function, since it is peculiarly the right of the state to construct and maintain public highways. But it is uniformly held in this state that exemption from liability does not exist in favor of cities with respect to negligence in constructing and maintaining its streets. This is in perfect keeping with the definitions quoted, for it cannot be said that it is the province of the state to open and maintain the numerous streets and alleys necessary to the ordinary

city or town. The state has never undertaken to do so, and no city or court can impose that duty upon it. The streets, alleys, and public ways within the corporate limits are primarily for the benefit of the inhabitants of the municipality. It is inconceivable that the establishment and maintenance of streets and alleys within the corporate limits are corporate or proprietary functions, and that the maintenance of a park within the corporate limits is not of that class, but governmental in its nature. It is more readily believable that the maintenance of a public park partakes less of the nature of a governmental function than the maintenance of public streets.

Different states have held differently with reference to the liability of a city for negligence in maintaining parks within its borders, but so they have held with reference to liability for negligence in the maintaining of streets. But we have not thought it necessary or profitable to review these different holdings and to attempt to reconcile them. We have preferred to decide the question upon the general principle in the light of our own decisions.

[4] But whatever may be said as to the proper classification of parks as affecting the municipal liability, it is not necessarily true that the question in the present case is controlled by that consideration. While municipal zoos are frequently and perhaps ordinarily found in public parks, there is no necessary connection between them, since such exhibits may, and often are, maintained elsewhere, as in structures or buildings not situated in a park. The essential nature of the act of keeping a vicious and dangerous wild animal where the public will be exposed to peril is not at all identical with that of maintaining a park where the tired public may seek rest and refreshment.

We are of the opinion that the judgment of the Court of Civil Appeals reversing the judgment of the trial court and remanding the cause for trial was right, not only upon the ground stated by that court—i. e., nuisance if the act were governmental—but upon the one discussed above as well; and for these reasons we recommend that it be affirmed.

GREENWOOD and PIERSON, JJ. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.