## CITY OF WICHITA FALLS v. MAULDIN et ux.

No. 1232—5606.

Commission of Appeals of Texas, Section B.
June 10, 1931.

Harris & Martin, of Wichita Falls, for plaintiff in error.

George & Brannan, of Wichita Falls, for defendants in error.

SHORT, P. J.

The defendants in error, who are husband and wife, and the owners of a certain town lot in the city of Wichita Falls, whereon there was situated a residence furnished with household and kitchen furniture and occupied by the owners, recovered a judgment against the plaintiff in error in the sum of $525 as damage to their property from surface flood waters caused to be thrown thereon by the alleged negligent acts of the plaintiff in error in grading and paving certain streets and cutting a certain ditch, into which the surface waters were diverted from their natural channel, which consisted of a drain located in the neighborhood of the property belonging to defendants in error, which had been sufficient, before the negligent acts done by the plaintiff in error, to carry off the surface flood waters without damage to defendants in error's property. There was a jury trial, and the court submitted special issues, upon the answers to which the judgment is based. From this judgment the plaintiff in error carried the case to the Court of Civil

Appeals at Fort Worth, where the judgment of the district court was affirmed. 23 S.W. (2d) 771. The writ of error was granted upon the conflicts alleged.

The petition of the defendants in error alleges, and their testimony shows, that on several occasions these surface flood waters overspread their premises and rose above the floor of the dwelling from four to eight inches deep, injuring the floors, walls, papering, and the underpinning of the house, and damaging its contents in the way of rugs, furniture, clothing and pictures. The articles inside the house, of a personal nature, which were damaged, and in some cases destroyed, while not itemized in the petition, were specifically stated in the testimony, together with the estimated damage to each, aggregating more than the sum alleged as damages to the personal property, according to the findings of fact by the Court of Civil Appeals. The damage to this property is alleged to have been $250, which, deducted from the amount recovered, would leave the remainder of the damages to the house, fences, and the lot itself to be $275. These latter damages were not specifically stated, but we think, the testimony is sufficient to justify the finding of fact, by the jury, that this $275 is a conservative estimate of the injuries inflicted upon the house, the fences, and the lot itself, by these surface flood waters, as evidently the Court of Civil Appeals so found.

According to the maps introduced by the parties, these surface flood waters, gathered from the watershed, were collected into a natural drain apparently commencing at the southeast end of Holliday street, which street extended to the northwest, and the general course of the drain was southeast. It crossed Twenty-First street, which ran east and west where that street intersected Princeton avenue, and entered the northwest corner of the block, traversing in an easterly direction the whole of that block, and crossed Broad avenue to the north of the injured premises, and thence southeasterly to a creek, where it emptied its waters, passing the premises to the east. Defendants in error's premises are located on Broad avenue, which runs north and south, some 200 feet south of where Broad avenue intersects Twenty-First street. The plaintiff in error graded Twenty-First street, and paved Broad avenue, and in doing so it cut a ditch running east from the point where the drain intersected Princeton avenue and Twenty-First street, approximately 300 feet; thence south down Broad avenue to an alley running east; thence east through said alley approximately 165 feet; thence south through another alley to the point where the drain crosses said alley; thence across said drain in a southeasterly direction where it again intersects the drain, the effect of which was to divert the waters from the drain, as they originally flowed, into this ditch, and evidently on account of the turning of the waters at right angles at three different places, the flow of the waters was retarded, so that, by the time they reached the vicinity of the northeast corner of the premises belonging to the defendants in error, they left the ditch towards the west, and overflowed these premises, which were lower than the ditch. The gist of the cause of action, asserted by the defendants in error, is that the plaintiff in error had negligently diverted this water from its natural flow through the drain, and caused it to invade their property, by the grading of Twenty-First street and the cutting of the ditch, the defendants in error claiming that, while the plaintiff in error had the right to grade the street, as it did, it was its duty to use ordinary care in the handling of the surface flood waters which previously had flowed through the drain, and that, by grading the street and cutting the ditch in the manner it did, they were guilty of negligence.

While the plaintiff in error has assigned many errors alleged to have been committed by the trial court, its chief contention is that, in doing what it did, it acted as an agency of the state, and that, in the exercise of its powers to grade streets and to provide drainage or sewerage, a municipal corporation does not become liable for the damage caused by the overflow of surface water. In this connection the plaintiff in error also contends that the water diverted into the ditch from the drain was the same water which would have flowed down the drain had the ditch not diverted it, and, that being true, it was within its rights in handling the water as it did, since it had the discretion to grade its streets according to its best judgment. Its contention is thus stated in the quotation from the opinion in Lessenger v. City of Harlan, 184 Iowa, 172, 168 N. W. 803, 804, 5 A. L. R. 1523: "A city is authorized under our statute to bring its streets to grade. This involves the idea of lowering or raising them above the natural level of the ground at points where the necessities of travel demand a lowering or raising. It has the power to open, grade, and improve its streets, and this involves grading, paving, and guttering. In determining the necessity for these, it acts in a legislative capacity, and is not answerable for error of judgment in this respect. * * * Where a city has authority, under the statute, to do a particular thing, through its properly constituted officers, it cannot be held liable to a citizen for consequences that follow the doing."

In the first place, we do not think that the plaintiff in error was acting in the capacity of a governmental agency when it graded Twenty-First street and cut the ditch. It is true it had the right to do both, but, in

exercising this right, it acted by virtue of its charter powers just as any other corporation would act within the scope of its power to do so. While the charter of the plaintiff in error gave it exclusive authority over its streets, with the right to grade them as it saw fit, the law does not authorize a municipal corporation, such as this is, to exercise this power in such a negligent way as to inflict damage upon the property of a private individual.

Section 17, art. 1, of the Constitution, provides that "no person's property shall be taken, damaged or destroyed for, or applied to, public use without adequate compensation being made, unless by the consent of such person." This section of the Constitution is discussed and construed in Fort Worth Improvement District No. 1 v. Fort Worth, 106 Tex. 148, 158 S. W. 164, 48 L. R. A. (N. S.) 994; McFaddin v. Jefferson County Drainage District No. 6 (Tex. Com. App.) 4 S.W.(2d) 33, 36; Railway Co. v. Fuller, 63 Tex. 467; Railway Company v. Hall, 78 Tex. 169, 14 S. W. 259, 9 L. R. A. 298, 22 Am. St. Rep. 42; Powell v. Railway Company, 104 Tex. 219, 135 S. W. 1153, 46 L. R. A. (N. S.) 615. The more recent decisions of our appellate courts are in harmony in holding that cities which are defined, under the law, as governmental agencies, are responsible for damage to a person's property inflicted in the pursuance of their acts and functions primarily for the benefit of those within the corporate limits of their municipality. Brewster v. City of Forney (Tex. Com. App.) 223 S. W. 175; Hidalgo Water Improvement District No. 2 v. Holderbraum (Tex. Com. App.) 11 S.W. (2d) 506; City of Forth Worth v. Wiggins (Tex. Com. App.) 5 S.W.(2d) 761; Ostrom v. City of San Antonio, 94 Tex. 523, 62 S. W. 909; White v. City of San Antonio, 94 Tex. 313, 60 S. W. 426.

▌ Of course, a municipality is exempt from liability for injuries inflicted in the discharge of duty imposed upon it as an agency of the state, in the exercise of a governmental function for the public benefit, but this function must be strictly construed, and the benefit must be for the sole benefit of the public. The testimony in this case shows that, before this street was graded and this ditch was cut and the water thereby diverted from its natural flow, the drain through which it passed was sufficient to carry it off without doing any damage to the premises belonging to defendants in error, and that, after the work had been done upon the street by grading it and the cutting of the ditch in the manner shown by the testimony, these waters, which had aforetime flowed harmlessly by the premises of the defendants in error, in times of flood, such as the testimony shows occurred when these damages were inflicted, flowed across and stood upon the lot belonging to the defendants in error to such a depth as it arose as high as eight inches above the floor of the house. Had there been no direct testimony, as there was, to the effect that this damage was the result of the negligence of the plaintiff in error in constructing the ditch and grading the street, this fact alone would have been sufficient to have justified the jury in concluding that the plaintiff in error had been negligent in the manner by which it diverted these surface flood waters. The jury found that the paving of Broad street and the grading of Twenty-First street, as well as the manner in which the plaintiff in error disposed of the accumulated surface flood waters, was negligence, and that this negligence was the proximate cause of the damage done to the property of the defendants in error, and that the amount of this damage was $525.

▌ When the plaintiff in error cut down the grade of this street, as it did, then it became incumbent upon it to provide another channel to care for the water thus diverted, in such a way as that the property of the defendants in error would be protected from damage, inasmuch as the testimony shows that these waters, when allowed to drain themselves naturally, had not inflicted any such damage in the past. The diverting of water from its natural channel, and throwing it upon the property of another, to his prejudice, creates a liability for damage against him who does so in favor of the party so prejudiced. The plaintiff in error has the exclusive right to grade its streets and pave them, but, in the exercise of this right, it is incumbent upon it to do so by exercising ordinary care to avoid injuring the property of its citizens. The testimony in this case shows that the plaintiff in error did not exercise this care in this instance, and, under the rules of common justice, it should be compelled to respond in damage for the consequences of its negligence. The exemption of a governmental agency from liability pertains only to its acts or functions, which are performed as the agent of the state in furtherance of the general law, for the interest of the public at large, as distinguished from those acts and functions intended primarily for the benefit of those within the corporate limits of a municipality. McQuillan on Municipal Corporations (2d Ed.) vol. 6, §§ 2792 and 2793. The city of Wichita Falls, under the facts of this case, does not come within this rule. The acts done, of which complaint is made, were not done in the furtherance of a strictly governmental function solely for the public benefit, but were done primarily for the benefit of that portion of the public within the corporate limits of the city.

▌ The writ of error was granted in this case on account of the facts alleged that the opinion of the Court of Civil Appeals is

862

in conflict with other decisions on the subject we have been discussing. As we construe the opinions in the cases cited, there is no such conflict as is alleged, with the possible exception of that rendered in Wallace v. City of Dallas, 2 Posey, Unrep. Cas. 424. We do not find it necessary to discuss the opinion in that case, for the reason that the opinion in Posey's Unreported Cases are not regarded as authority by the Supreme Court of this state. The rule is well settled now in Texas that, where the proximate cause of damage to the citizen is not the governmental plan adopted by the city, but is a negligent carrying out of such plan, the city is liable, not for adopting or carrying out the plan, but for the negligent execution of it. The principle announced in the case of the City of Galveston v. Posnainsky, 62 Tex. 118, 50 Am. Rep. 517, which is in harmony with the principle upheld in this case by the Court of Civil Appeals, has been repeatedly approved by the Supreme Court, and is quoted with approval in White v. City of San Antonio, 94 Tex. 313, 60 S. W. 426, and in Ostrom v. City of San Antonio, 94 Tex. 523, 62 S. W. 909, and in Cawthorn v. City of Houston, 231 S. W. 701, the latter opinion being by the Commission of Appeals, which is expressly approved by the Supreme Court. This principle is also rather elaborately discussed by Judge Speer of this section of the commission in the case of the City of Fort Worth v. Wiggins, 5 S.W.(2d) 761.

While there are other assignments of error presented in the application for the writ of error, in view of the elaborate discussion by the Court of Civil Appeals of the matters presented, wherein it reached a correct conclusion under the facts of this case, it is unnecessary to discuss any of them, being of the opinion that all of them should be overruled.

We recommend that the judgment of the Court of Civil Appeals affirming that of the district court be affirmed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.