

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

April 28, 1964

Honorable Henry Wade
District Attorney
Dallas County
Records Building
Dallas, Texas

Dear Mr. Wade:

Opinion No. C-249

Re: Is it mandatory that employees
of the City of Dallas, opera-
ting the Dallas Transit Co.
buses, have a commercial
chauffeur's license?

You recently requested an opinion of this office on the following question:

"Is it mandatory that employees of the
City of Dallas, operating the Dallas Transit
Co. have a commercial chauffeur's license?"

You have furnished us with the following facts:

"The City of Dallas recently acquired
the operating properties of the Dallas
Transit Company (which operated buses with-
in the city limits of Dallas and environs);
and the City of Dallas is now operating this
public transit system as an official depart-
ment of the City of Dallas.

"The Dallas Transit Company is wholly
owned by the City of Dallas, and the bus
operators employed to drive same are full
time employees of the City of Dallas."

Article 6687b, Section 1(o), Vernon's Civil Statutes,
defines chauffeur as:

"'Chauffeur.' Every person who is the
driver for wages, compensation, or hire, or
for fare, of a motor vehicle transporting
passengers."

Article 6687b, Section 3, Vernon's Civil Statutes, pro-
vides in part as follows:

"Sec. 3.  What persons are exempt from license

".  .  .  .

"4.  .  .  . It shall not be necessary for an employee of any incorporated city, town or village of this State or county of this State when holding an operator's permit to obtain a chauffeur's license in order to operate an official motor vehicle in the service of such incorporated city, town, village or county.

".  .  .  ."

This language has appeared in the statute since its original passage in 1941.  Acts 47th Leg. 1941, ch. 173, p. 245.  We see the question to be one of determining what is an "official motor vehicle" in the "service" of an incorporated city, town, village or county.  The Act does not define the term.  The word "official" is used as an adjective describing motor vehicles. The Merriam-Webster Third Edition International Dictionary, 1961, uses the following definition for the adjective "official":

"belonging or relating to an office, position, or trust: connected with holding an office. . .: holding an office or serving in a public position: authorized to perform a service. . ."

If we consider the term "official motor vehicle" as a noun, the definition becomes more restrictive.  We are, therefore, of the opinion that Article 6687b, Section 3, Paragraph 4, means those motor vehicles owned by the city for the use of an official of the city, as for example where a mayor, city manager, police chief, etc. are furnished with automobiles which are driven by city employees; also fire engines, police vehicles, etc.  However, city buses are not "official" vehicles of the city, because they are not in the service of the city, as such, and the passengers are being transported for hire or compensation. The city only indirectly benefits from the profits accruing from the operation.  The service to the traveling public is not a governmental function of the city.

18 McQuillin on Municipal Corporations (3rd Ed. Rev.) Sec. 53.108 on p. 426 says:

"In operating a system of buses for the transportation of passengers for hire, a city functions in its corporate, as distinguished from it governmental capacity, and may be held liable for injuries sustained through the negligent operation of a bus. A city is liable as a common carrier with respect to passengers, and is required to exercise a high degree of care for their safety, not only while being transported, but also when entering the vehicle, or alighting therefrom. . . ."

City of Amarillo v. Tutor, 267 S.W. 697 (Tex. Comm. App. 1924); City of Amarillo v. Green, 267 S.W. 702 (Tex. Comm. App. 1924); 39 Tex.Jur.2d 276, Municipal and Interurban Transportation, Sec. 2. It, therefore, seems that the Legislature intended to give the public the protection of operators with a chauffeur's license driving city-owned buses as the city, acting in its corporate or non-governmental capacity, is required to exercise a high degree of care for the safety of the passengers being transported.

We are, therefore, of the opinion that Paragraph 4, Section 3 of Article 6687b does not apply to city owned buses because such buses are not "official motor vehicles" in the service of the city, and the city in operating the bus company is not acting in a governmental capacity.

## S U M M A R Y

Employees of the City of Dallas operating Dallas Transit Company buses must have a commercial chauffeur's license as required by Article 6687b, V. C. S., even though the Dallas Transit Company is wholly owned by the City of Dallas and the bus operators employed to drive the buses of the company are full-time employees of the City of Dallas.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

NORMAN V. SUAREZ
Assistant Attorney General

Honorable Henry Wade, Page 4 (C-249 )

NVS:aj

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
Paul R. Robertson
John Reeves
Robert Smith
W. O. Shultz

APPROVED FOR THE ATTORNEY GENERAL
BY:  Stanton Stone